UNITED STATES of America, Plaintiff-Appellee

v.

Chris CARDI, Defendant-Appellant.

No. 74–1291.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1974.

Decided July 10, 1975.

Albert E. Jenner, Jr., Thomas P. Sullivan, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Michael D. Groark, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before BARNES, Senior Circuit Judge,* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

The defendant Chris Cardi appeals from the denial of his motion, pursuant to Rule 35, Fed.R.Crim.P., for a reduction of sentence. On appeal, Cardi essentially contends that: (1) the district court failed to consider adequately the reversal by this court of the conviction on two counts; (2) the district court erroneously considered certain information; (3) the defendant was sentenced in violation of the Double Jeopardy Clause of the Fifth Amendment; and (4) the defendant's sentence was excessive when compared with the sentence given to his co-defendant.

Cardi was convicted, after a jury trial, of one count of conspiracy and three substantive counts charging sales of narcotics. The defendant was sentenced under 21 U.S.C. § 174, which provided for a mandatory minimum sentence of five years on each count and a maximum sentence of twenty years on each count for a first offender.[1] The district judge sentenced Cardi to the mandatory minimum sentence of five years on each of the four counts, with the sentences on the three substantive counts to run concurrently with each other but consecutive to the sentence on the conspiracy count, for a total of ten years.

On direct appeal, this court affirmed Cardi's conviction on the conspiracy count and one substantive count but reversed the conviction on the other two substantive counts. *United States* v. *Cardi,* 478 F.2d 1362 (7th Cir. 1973), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237.[2]

Cardi then moved, pursuant to Rule 35, for a reduction of sentence, but this motion was denied. As a matter of law, due to the mandatory nature of the sentence on each count, as long as the convictions remain standing on each count, the only relief which the district court could have granted would have been to make the remaining two sentences run concurrently.

I

Cardi's first contention is that the district court, in ruling on the Rule 35 motion, continued to be influenced by the jury's conviction on all four counts even though this court had reversed the conviction on two of the substantive counts.

A district judge has wide discretion, within the statutory limits, in imposing sentence and the exercise of that discretion will not be disturbed on

---

* Senior Circuit Judge Stanley N. Barnes of the Ninth Circuit is sitting by designation.

1. Section 174 has since been repealed.

2. A complete exposition of the facts surrounding the narcotics sales involved in this case is set forth in the opinion of this court on the prior appeal and need not be repeated here.

appeal except on a plain showing of abuse. *United States* v. *Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States* v. *Willard,* 445 F.2d 814, 816 (7th Cir. 1971). However, a remand for resentencing is necessary if the district judge based his sentencing decision at least in part on prior convictions which were constitutionally invalid, *Tucker, supra,* or on "assumptions concerning [the defendant's] criminal record which were materially untrue." *Townsend* v. *Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

■ In the present case, the district court, in denying the Rule 35 motion, was fully aware that Cardi's conviction on two substantive counts had been set aside. Moreover, the district judge, in ruling on the Rule 35 motion, made it clear that his decision was not influenced by the invalid convictions:

> "As to both sentences, I took certain factors into consideration at the time I imposed them, I thought that they were proper at the time that the sentences were imposed. There is nothing in the Court of Appeals' opinion that changes my view as to the factors that I did take into consideration. Those factors still influence me and I think that the ten-year sentence under the particular conditions of this case was entirely proper."

The clear implication of this statement is that the district judge, in originally setting the sentences on the valid counts, had not relied on the convictions on the counts which were subsequently declared invalid, but he had relied instead on certain other factors which were not affected by the subsequent partial reversal, and that in denying the Rule 35 motion, he continued to rely only upon such factors. Cardi's reliance on *James* v. *United States,* 476 F.2d 936 (8th Cir. 1973), is therefore inapposite since, in *James,* the district court made no express statement with respect to the consideration, if any, given to the invalid convictions.

Cardi argues, however, that although the district judge here never expressly stated, in either the original sentencing or the Rule 35 hearing, what factors had influenced him, the judge did refer to Cardi, at various times, as the "focal point of whatever went on here" and as "the vital cog" in the conspiracy. Cardi asserts that the finding by this court that there was no evidence to indicate that Cardi was involved in the conspiracy after September 25 made the district court's statements erroneous. We disagree. Even allowing for the partial reversal, the evidence indicated that before Cardi intervened, Cimmino had been slow to deal with the Government agents and had "burned" the agents by selling them flour rather than heroin. When the agents went to Cardi, however, he assured them that they would "get it." Immediately after the conversation between Cardi and the agents, Cimmino telephoned the agents and told them "you're going to get your stuff, Dickie [Cardi's nickname] is on my back." The heroin was delivered shortly thereafter.

■ Cardi next argues, relying on *McGee* v. *United States,* 462 F.2d 243 (2d Cir. 1972), that we should remand the case to the district court for an explanation of why the original sentence on the valid counts was not reduced. In *McGee,* the defendant was convicted on four counts of violating the Selective Service Act and was given identical concurrent sentences on the four counts. The Second Circuit affirmed the conviction as to three of the counts but reversed as to one. The district court subsequently denied a Rule 35 motion to reduce the sentences on the three valid counts. On appeal, the Second Circuit noted that the invalid count had always been regarded as "far more serious" than the other three counts; that it was Government policy not to prosecute registrants for the selective service violations alleged in the three valid counts in the absence of the violation alleged in the invalid count; and that it was impossible to determine from the judge's remarks in imposing sentence whether he was influenced by the conviction on the invalid count in setting sentence on the valid counts. Although observing that generally a trial judge is under no obli-

gation to give reasons for his sentencing decision, the Second Circuit held that "[i]n this particular case . . . the trial judge should either have reduced the sentences on [the valid counts] or have given at least a summary explanation of his reasons for declining to do so . . . ." 462 F.2d at 247.

The present case is clearly distinguishable from *McGee.* Here the invalid counts simply charged two additional narcotics sales and were by no means "far more serious" than the remaining valid counts. There is no contention, moreover, that it would be against Government policy to prosecute Cardi only on the valid counts. Furthermore, as explained above, the district judge here, in ruling on the Rule 35 motion, made it clear that in his original sentencing he had not relied upon the convictions on the invalid counts in setting the sentences on the valid counts.

## II

Cardi next contends that certain information, regarding Cardi's associates, source of income, and prior criminal conduct, was erroneously considered by the district judge in the original sentencing and was not eliminated from his consideration in ruling on the Rule 35 motion.

 In making the determination of what sentence to impose, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States* v. *Tucker, supra,* 404 U.S. at 446, 92 S.Ct. at 591. The sentencing judge "is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." *Williams* v. *Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959). See also *Williams* v. *New York,* 337 U.S. 241, 250–251, 69 S.Ct. 1079, 93 L.Ed. 1337

(1949). Cardi's attack on the hearsay nature of Siragusa's testimony and Malone's affidavit is, therefore, without merit.

Cardi relies on language used by the district court in *United States* v. *Rao,* 296 F.Supp. 1145, 1148 (S.D.N.Y.1969), being an explicatory opinion in connection with a sentencing. Recognizing that "[a] defendant's associates and his reputation are, of course, relevant biographical circumstances to be considered by the Court, along with other pertinent data, in evaluating the defendant's background, personality and characteristics and in forming a comprehensive judgment", citing *Williams* v. *New York, supra,* the district court, somewhat paradoxically, it appears to us, then stated that "the defendant's alleged underworld associates and his alleged status in the Mafia or Cosa Nostra cannot and do not constitute a predicate or criterion for punishment." We are not, of course, in any sense advocating a policy of guilt by association but we are here dealing with the situation in which guilt has already been established. There comes before the judge then the delicate and sensitive question of the "comprehensive judgment" which will determine the appropriateness of probation, suspended sentence, or incarceration and the period thereof. What will be accomplished by imprisonment of the individual before the judge raises profound sociological and societal problems but, under our existing system, these problems must be resolved on a case by case basis with the ultimate resolution equating with the comprehensive judgment formed about the guilty individual.

The task is not a simple one for the conscientious judge, indeed is an awesome responsibility, and it is easy with hindsight to seize out of context upon words, perhaps prompted by judicial soul-searching, to claim that the sentencing was somehow improperly influenced.

Returning to *Rao,* we have difficulty in reconciling the judge's recognition of the *Williams* standard with his subsequent pronouncement. In candor, it ap-

pears that the judge was making a valiant effort to eliminate the possibility of a hindsight challenge by expressly denying any consideration of the underworld character evidence of the defendant before him. We would hope that sentencing judges do not become constrained by overly technical restrictions from candidly, honestly, and objectively evaluating all factors which in human experience would properly reflect upon the matter of appropriate punishment. We decline to accept *Rao* as in any way binding upon this court insofar as it would appear to stand for any different principle. At this point, it also would be well again to state, as we have elsewhere in this opinion, that the district court in the case before us had no choice but to impose at least the minimum, mandatory sentence on each count and he imposed no more. The only lesser sentence he could have imposed would have been to make the sentences concurrent. He, however, determined as a result of forming a comprehensive judgment as to the person before him that the sentences should be served consecutively.

■ Cardi, moreover, was given the opportunity—at the bond revocation hearing, at the sentencing hearing, and at the hearing on the Rule 35 motion—to state his version of the relevant facts. The affidavit of FBI agent Robert Malone was admittedly disclosed to Cardi's attorney with instructions that he not divulge its contents to Cardi. This procedure, however, was established by this court in *United States* v. *Solomon,* 422 F.2d 1110 (7th Cir. 1970). Furthermore, the testimony of Charles Siragusa, Executive Director of the Illinois' Investigating Commission, which was presented in open court, related essentially to the same information as did the Malone affidavit, viz., Cardi's connection with "juice loan" activities and his use of force when loan payments were not made.[3]

Although Cardi now asserts that the allegations in Siragusa's testimony and the Malone affidavit are unreliable, at neither the bond hearing, nor the sentencing, nor the Rule 35 hearing, did he specifically deny the accuracy of the statements. The defendant's sole objection related to the hearsay nature of the statements. We find unpersuasive Cardi's argument that the allegations were too broad to permit effective rebuttal. Cardi, at the very least, and he did testify as to other matters, could simply have denied (a) that he was active in the "juice loan" racket and (b) that he physically assaulted people in connection with such loans or otherwise.

The defendant's reliance on *United States* v. *Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), is misplaced. In *Weston,* the Ninth Circuit remanded for resentencing where the district judge had indicated, shortly after the defendant's conviction for possession of heroin, that the mandatory minimum sentence of five years would be appropriate, but after reading a presentence report which consisted of unverified hearsay and which indicated that the defendant was a major heroin supplier, had imposed the maximum twenty year sentence. The Ninth Circuit noted that Weston had vigorously denied the truth of the allegations in the report. In the present case, however, there was no denial of the accuracy of Siragusa's testimony or the Malone affidavit, and the sentence imposed on Cardi was far from being the maximum sentence possible. In any event, there is no indication that the district judge imposed consecutive, rather than concurrent, sentences because of the "juice racket" information. In addition, there was, in Cimmino's statements to Moore regarding "collecting" for Cardi, some corroboration of

---

**3.** The district court was aware that Cardi had been acquitted in the state court of certain charges connected with the "juice loan" racket. The acquittal does not preclude the district court from considering the information con-

cerning Cardi's association with these activities. *United States* v. *Haygood,* 502 F.2d 166, 171–72 n. 16 (7th Cir. 1974); *United States* v. *Sweig,* 454 F.2d 181, 184 (2d Cir. 1972).

the allegations. See *United States* v. *Needles,* 472 F.2d 652, 659 (2d Cir. 1973).

Cardi's assertion that he had inadequate time to prepare a rebuttal is unimpressive. At no time did the defense move for a continuance. Moreover, Siragusa's testimony and the Malone affidavit were first presented at the bond hearing on October 21, 1971. The defense had an opportunity to deny the purport of these allegations not only at that time but also at the sentencing hearing on October 29, 1971, and at the Rule 35 hearing on February 27, 1974.

■ We also find unpersuasive Cardi's contention that he should have been permitted to cross-examine Malone. Generally, there is no requirement that an investigator be called into open court to verify statements of fact in his report. *Williams* v. *Oklahoma, supra.* The defendant's reliance on *United States ex rel. Brown* v. *Rundle,* 417 F.2d 282 (3d Cir. 1969), is inapposite since there the presentence report contained "an obviously significant and very damaging purported statement of the defendant to the investigator and the defendant denie[d] having made [the] statement," a situation the Third Circuit described as "special and extraordinary." 417 F.2d at 285. Unlike Brown, Cardi did not deny the allegations concerning the "juice loan" racket. Further, the crime of which Cardi was convicted, i. e., involvement in the sale of heroin near a college campus, was not a type to make it appear somehow secondary to the "juice loan" racket but rather the crime was its own independent source for consideration of substantial punishment, indeed, punishment which had a substantial mandatory minimum under the statute.

Cardi's contention that he must be resentenced because the district judge misstated the defendant's income as $200 a month instead of $200 a week is wholly without merit. This error, as well as Attorney Jenner's affidavit concerning lack of payment of fees thus far, was brought to the court's attention in support of Cardi's Rule 35 motion.

■ Finally, upon a review of the relevant portions of the record, we are convinced that Cardi's allegation that his sentence was increased because he exercised his privilege against self-incrimination at the trial is without merit. The defendant in his brief stated that the judge found "that Cardi failed to take the stand in his own defense." The actual record quotation is "that Cardi put on no defense whatsoever to refute the government's allegations of his role in the conspiracy." Defenses are not necessarily limited to that to which the defendant can testify.

### III

Cardi next argues that since the evidence which proved the substantive sale count also proved the conspiracy count, the imposition of consecutive sentences for these two counts violated the Double Jeopardy Clause. We disagree.

■ As Cardi concedes, this court expressly held, on direct appeal of this case, that "the substantive offenses did not merge into the conspiracy." 478 F.2d at 1370. Since the conspiracy and substantive counts charge separate and distinct offenses, "consecutive sentences [could] be imposed for the conspiracy and for the underlying crime." *United States* v. *Feola,* 420 U.S. 671, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541 (1975). See also *Pinkerton* v. *United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States* v. *Miller,* 508 F.2d 444, 447-48 (7th Cir. 1974); *United States* v. *Daddano,* 432 F.2d 1119, 1129 (7th Cir. 1970), *cert. denied,* 402 U.S. 905, 91 S.Ct. 1366, 28 L.Ed.2d 645 (1971).

### IV

Finally, Cardi contends that his sentence was excessive in view of the fact that his co-defendant Cimmino, who was convicted on seven counts, also received a ten-year sentence.

■ However, a district court has broad discretion, within the statutory limits, in imposing sentence and a mere

showing of disparity of sentences among co-defendants does not constitute an abuse of discretion. See *United States v. Amick,* 439 F.2d 351, 371 (7th Cir. 1971), *cert. denied,* 403 U.S. 918, 91 S.Ct. 2227, 29 L.Ed.2d 694; *United States v. Rook,* 424 F.2d 403, 406 (7th Cir. 1970), *cert. denied,* 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550. Having reviewed the record, we cannot say that the district judge abused his discretion in imposing on Cardi two consecutive minimum sentences.

## V

Much of the emphasis in this appeal upon supposedly improper factors having been given consideration by the district court in sentencing, and supposedly having not been eliminated from consideration at the Rule 35 hearing, rests upon the premise that the district court judge failed, or was unable, to compartmentalize into appropriate areas for consideration the factors which had been presented to the court. The premise appears to have arisen largely from the fact that the matters of sentencing and bail were before the court in a case time juxtaposition.

In the foregoing opinion, we have treated the appeal on the arguendo assumption that the challenged factors were given consideration in the overall background picture which was before the judge. Upon that basis, we have concluded that the district court did not exceed the full measure of discretionary latitude allowed in the difficult business of sentencing. While that is sufficient for the disposition of this appeal, we nevertheless also entertain the belief that we should not conclude this opinion without expressing the opinion that we regard the underlying premise of the defendant as being infirm. In that connection we turn to the matters before the court in October 1971 following the conviction.

On October 21, 1971, bail was revoked following a hearing at which the Malone affidavit, the Siragusa testimony, and witnesses on behalf of Cardi were presented. On October 29, 1971, the matter of sentencing came before the court. After hearing some testimony from Cardi, the court entered sentence stating only the following:

"Certainly, there was enough evidence produced at this trial to convince the jury that Mr. Cardi was involved, and, as the evidence certainly indicated that he was more involved, as counsel for the Government has described as the focal point of whatever went on here, than any one of the persons that were charged in this indictment. The operation couldn't have gone on without him."

Following the sentencing, Cardi moved for enlargement on bail pending appeal. It was in reference to this application that the judge referred to the amount of income being received by Cardi. The second bail application was not ruled on until November 3, 1971. It was not until this time, and in this connection only, that the judge referred to the fact that Cardi put on no defense, the lack of an apparent source of legitimate income accompanied by ability to employ prominent counsel [Julius Echeles, Percy Foreman, and Albert E. Jenner, Jr.], Cardi's own employment by a noted underworld figure and, Cardi's connection with the "juice racket."

Looking at the chronology and the court's pronouncements on the two separate subjects we are not persuaded that insofar as the original sentencing was concerned it was based upon anything more than a fair evaluation of the nature of the crime of which Cardi had been convicted and the extent of his involvement. In this connection, it is to be noted that the sentences on the three substantive counts were to run concurrently with each other. An attitude of vindictiveness, or a desire to penalize because of underworld connections was susceptible of manifestation by a doubling, indeed by quadrupling, of the minimum sentences. That underworld connections and participation in the "juice racket" may have had a bearing upon denial of bail is not a basis for saying

that the district court in the separate matter of sentencing abused his discretion, when it is quite obvious to us that he did not.

We have considered other matters raised, which for the most part are merely variants of those which we have specifically considered, and find no merit to them.

Accordingly the denial of the Rule 35 motion for reduction of sentence is affirmed.