**UNITED STATES of America, Plaintiff,**

v.

**David Michael MARSHALL, Defendant.**

**No. 81–CR–23.**

United States District Court,
E. D. Wisconsin.

Aug. 4, 1981.

Joseph P. Stadtmueller, U. S. Atty. by Lawrence O. Anderson and William E. Callahan, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff.

Nikola Kostich, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This decision constitutes the written record of a decision issued orally during the sentencing proceeding held in this action on July 29, 1981.

On May 19, 1981, following a jury trial, a verdict was returned finding the defendant David Michael Marshall guilty on Counts 1 and 3 and not guilty on Count 2 of a three-count indictment charging the defendant with violations of the National Firearms Control Act, 18 U.S.C. §§ 922(g)(1) and 922(h)(1). Each count on which the defendant was convicted carries a maximum penalty of a $5,000 fine and/or up to five years' imprisonment.

Sentencing was scheduled for June 30, 1981. The proceeding was continued at the defendant's request to July 23, 1981, to allow him an opportunity to gather evidence and present testimony in his own behalf. At the hearing on July 23, 1981,

the defendant presented testimony by four persons who testified to the defendant's reformed character and his active participation in an alcoholics rehabilitation program. He requested that he be sentenced to a period of probation as opposed to incarceration.

The Government recommended a period of several years incarceration. It based its recommendation upon the defendant's past criminal record, its belief that the defendant perjured himself during the trial of this action, and its belief that the defendant had been in the past a national enforcer for the Outlaws Motorcycle Club and had been responsible for at least one murder of a rival club member in Canada. The Government's counsel stated during the sentencing proceeding that the sources of information regarding the defendant's activities as an enforcer included a former associate of Mr. Marshall's who was identified by name and had provided information to the Drug Enforcement Administration, a former Outlaws member who identified himself and Mr. Marshall as "hit men" in the Outlaws "death squad," and interviews with various law enforcement officers, in particular members of the Canadian Mounted Police and Ontario Provincial Police, regarding Mr. Marshall's role in a 1978 gang war between the Outlaws Motorcycle Club and the Hell's Angels Motorcycle Club in the United States and Canada. The Government's counsel read into the record a teletype dated July 23, 1981, from Detective Sergeant Terry L. Hall of the Ontario Provincial Police, stating that he first came into contact with the defendant in February 1978 during an investigation following the murder in Montreal of Robert Cote, an Outlaws club member, by the Hell's Angels Motorcycle Club. At that time Hall accused the defendant of being an enforcer brought in to avenge Cote's death. Marshall denied the charge. Hall states that he came into contact with Marshall again in Florida in March 1978, and at that time Marshall admitted to Hall that he was an enforcer for the Outlaws and stated that he had killed before. Hall states that he later confirmed the information given to him by Marshall from other "reliable sources."

The defendant was offered an opportunity to reply to the Government's statement. After consultation with his counsel, his counsel stated that in order to reply to the statement, Mr. Marshall would be required to waive his rights under the Fifth Amendment, which he preferred not to do, and therefore he requested that the Court proceed to sentencing.

I declined to proceed at that time in order to study the record prior to sentencing and to decide what information I could properly consider and rely upon in passing sentence. The sentencing proceeding was continued to July 29, 1981. Having now considered the record and reviewed the case authority, I am satisfied that the hearsay information presented by the Government was reliable, that it was the type of information which a Court may properly consider in evaluating the character of a defendant prior to sentencing him for a crime of which he has been found guilty, and that the information presented by the Government, coupled with the defendant's felony record and history of firearms misuse and his untruthful testimony at trial, justify the imposition of a substantial period of incarceration.

■ Section 3577 of Title 18, U.S.C., provides:

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The Supreme Court has also held on many occasions that receipt and consideration of non-testamentary information by the sentencing judge does not offend the Constitution. For example, the judge may consider his own belief through observation of the defendant that the defendant perjured himself during trial. *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). See also *United States v. Levine*, 372 F.2d 70 (7th Cir. 1967); *United States v. Martinez-Navarro*, 604 F.2d 1184 (9th Cir.

1979). He may also consider hearsay evidence of criminal activity for which the defendant has been neither prosecuted nor convicted. *United States v. Cardi,* 519 F.2d 309, 313–314 (7th Cir. 1975); *United States v. Johnson,* 507 F.2d 826, 829–830 (7th Cir. 1974), cert. denied 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); *United States v. Haygood,* 502 F.2d 166, 171 n. 16 (7th Cir. 1974), cert. denied 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812; *United States v. Sweig,* 454 F.2d 181, 183–184 (2d Cir. 1972).

In *United States v. Grayson,* supra, 438 U.S. at 49–50, 98 S.Ct. at 2615, quoting from *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court stated:

" * * * [T]raditionally 'a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.' *Id.,* at 246 [69 S.Ct. at 1082]. 'And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information,' *id.,* at 247 [69 S.Ct. at 1083]; indeed, '[t]o deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation.' *Id.,* at 249–250 [69 S.Ct. at 1084]. Accordingly, the sentencing judge was held not to have acted unconstitutionally in considering either the defendant's participation in criminal conduct for which he had not been convicted or information secured by the probation investigator that the defendant was a 'menace to society.' See *id.,* at 244 [69 S.Ct. at 1081].

"Of course, a sentencing judge is not limited to the often far-ranging material compiled in a presentence report. '[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' *United States*

*v. Tucker,* 404 U.S. 443, 446 [92 S.Ct. 589, 591, 30 L.Ed.2d 592] (1972). * * * "

■ The Seventh Circuit in *United States v. Cardi,* 519 F.2d 309, 313 (7th Cir. 1975), described the duty of a sentencing judge in the following terms:

" * * * We are not, of course, in any sense advocating a policy of guilt by association but we are here dealing with the situation in which guilt has already been established. There comes before the judge then the delicate and sensitive question of the 'comprehensive judgment' which will determine the appropriateness of probation, suspended sentence, or incarceration and the period thereof. What will be accomplished by imprisonment of the individual before the judge raises profound sociological and societal problems but, under our existing system, these problems must be resolved on a case by case basis with the ultimate resolution equating with the comprehensive judgment formed about the guilty individual."

The Court specifically rejected the reasoning of *United States v. Rao,* 296 F.Supp. 1145 (S.D.N.Y.1969), which held that it was improper for a sentencing judge to consider hearsay evidence of a defendant's underworld associations and his status in the Mafia. Instead, the Seventh Circuit stated:

" * * * We would hope that sentencing judges do not become constrained by overly technical restrictions from candidly, honestly, and objectively evaluating all factors which in human experience would properly reflect upon the matter of appropriate punishment. * * * " 519 F.2d at 314.

Thus, the requirements of due process in relation to evidence received during a sentencing proceeding do not correspond to the requirements of due process at the trial stage. *Williams v. New York,* supra, 337 U.S. at 251, 69 S.Ct. at 1085. So long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence. Compare *United*

*States v. Harris,* 558 F.2d 366, 376 (7th Cir. 1977), a case which the Seventh Circuit remanded for resentencing because the defendant challenged the accuracy of certain hearsay information, accusing him of a far more serious crime than the one for which he was convicted, contained in the presentence report but contradicted by other information in the report and which was supported only by a statement of an F.B.I. agent regarding uncorroborated information obtained from an unidentified informant with alleged underworld connections.

■ In this case there is good reason to believe that the information provided by the Government with regard to Mr. Marshall's past criminal activities for which he has not been prosecuted or convicted is accurate. The primary source of the information is a Canadian law enforcement officer who states that his information is based upon admissions made to him directly by Mr. Marshall. The officer's statements with regard to Mr. Marshall's role as an enforcer for the Outlaws Motorcycle Club are corroborated by statements made by identified informants, who were past associates of Mr. Marshall's, to various law enforcement officers.

As was his right, Mr. Marshall declined to comment specifically on the charges of criminal conduct set forth by the Government, citing the Fifth Amendment. While he told the probation office that he was in Canada only to attend a funeral, he has neither made any effort to produce witnesses or evidence which would corroborate his claim, nor has he specifically denied the truth of the charges. Thus, the Government's information being of a type normally considered to be reliable, and there being nothing in the record which undermines the accuracy of the information, it may be taken into account in evaluating the character of the defendant for purposes of sentencing. *United States v. Harris,* supra, at 376–377.

The defendant received a bad conduct discharge from the U. S. Marine Corps in 1965 and was evaluated by his superiors as being negativistic, hostile, and belligerent. Since 1965 his record of employment is sporadic at best. His record of arrests and convictions includes three convictions for property crimes, and it also reveals a propensity toward the misuse of firearms, the most recent incident having resulted in a conviction in September 1979 for carrying a concealed weapon. I am also persuaded that the defendant was not truthful in his testimony during the trial of this action. Perjury is a serious crime in itself and is also reflective of the character of the defendant. *United States v. Grayson,* supra, 438 U.S. at 51, 98 S.Ct. at 2616.

The only substantial mitigating factors presented for my consideration during the sentencing proceeding were the defendant's apparent success in having overcome a long term problem with alcohol abuse, his enduring relationship with the woman with whom he lives and with her son, and the absence of any criminal charges against or claims of violent activity by the defendant since September 1979.*

■ On balance, I cannot conclude that the defendant has reformed to the point where he does not pose a danger to others.

Taking into account all of the factors set forth above, I believe that he is a dangerous person and that his present life style is not so stable as to compensate for his propensity toward violent behavior. For that reason primarily, I further believe that a substantial period of incarceration is merited.

Therefore, the defendant David Michael Marshall having been found and adjudged guilty on May 19, 1981, after jury trial, as to Count 1 of the indictment charging him with violation of 18 U.S.C. § 922(h)(1) and Count 3 of the indictment charging him with violation of 18 U.S.C. § 922(g)(1), and the Court having asked the defendant why judgment should not now be pronounced and no cause to the contrary appearing to the Court, and the defendant and his attorney having made a statement in mitigation of sentence, and the Court having reviewed the presentence report and the information

* The events underlying this action took place in 1978.

submitted by the United States and having considered the testimony of the witnesses at the sentencing proceeding, and having also considered the congressional purpose in enacting the National Firearms Control Act, which was to aid in controlling the problem of convicted felons having possession of firearms,

IT IS ORDERED AND ADJUDGED that the defendant David Michael Marshall is sentenced to be committed to the custody of the Attorney General of the United States, or his authorized representative, for imprisonment for a term of five years for the offense charged in Count 1, and for a term of five years for the offense charged in Count 3. The sentence imposed in Count 3 is to operate concurrently with the sentence imposed in Count 1, making a total sentence to be served of five years.