**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Michael MARSHALL,
Defendant-Appellant.**

**No. 81–2327.**

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1982.

Decided July 15, 1982.*

Opinion Oct. 26, 1983.

---

* This appeal was originally decided by unreported order on July 15, 1982. See Circuit Rule 35.

The Court has subsequently decided to issue the decision as an opinion.

Brady C. Williamson, Madison, Wis., for defendant-appellant.

Elizabeth Adelman, Asst. U.S. Atty., Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, GIBSON, Senior Circuit Judge,** and CUDAHY, Circuit Judge.

** The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals, Eighth Circuit, is sitting by designation.

FLOYD R. GIBSON, Senior Circuit Judge.

David Michael Marshall was convicted on two counts of violating 18 U.S.C. §§ 922(g)(1), (h)(1) (1976) which prohibit the transportation of firearms in interstate commerce and the receipt of firearms so transported by a person convicted of a crime punishable by more than one year in prison.[1] Marshall was charged with receiving a rifle in Wisconsin which had moved in interstate commerce, and with transporting the rifle from Wisconsin to Illinois. The district court, 519 F.Supp. 751, sentenced Marshall to the maximum imprisonment under 18 U.S.C. § 924(a) (1976) of five years on each count, to be served concurrently. Marshall appeals his conviction for transporting the rifle, arguing that there was insufficient evidence that he was the person who transported the rifle. He also appeals his sentence, arguing that the sentencing judge improperly considered inflammatory hearsay statements that Marshall was a murderer and a member of a motorcycle gang death squad. We affirm Marshall's conviction and sentence.

I.

Marshall was convicted of attempted burglary in New York in 1965, an offense punishable by more than one year in prison, bringing him within the prohibitions of §§ 922(g)(1), (h)(1) relating to the receipt and transportation of firearms. A drinking companion of Marshall testified that on April 3, 1978, Marshall accompanied him to a sporting goods store and had him buy a rifle for Marshall. The companion also testified that Marshall paid for the weapon and put it in the trunk of his girlfriend's car. Marshall denied that the rifle was bought on his behalf or that he put it in his girlfriend's car. The companion's testimony was the basis of Marshall's conviction for receipt of the firearm, which Marshall does not appeal. Marshall was acquitted on a charge that he bought a shotgun on April 21, 1978, in a similar way.

On August 5, 1978, police found the rifle in Illinois, in the closet of the apartment of another friend of Marshall, Deborah R. Cannon. Marshall was at the apartment when the rifle was found. Cannon testified that Marshall was the only person, other than herself and her two-year-old daughter, who was in and out of her apartment at will. Marshall admitted keeping personal belongings at Cannon's apartment and that he sometimes stayed there twice a week. Cannon testified that she had not put the rifle in the closet and did not know how the rifle got there.

Marshall was tried and convicted in May 1981 and sentenced in July 1981. At Marshall's sentencing hearing, the Government offered an explanation of why it prosecuted Marshall, acknowledging that it does not prosecute every felon who is found with a gun. The Government said its inquiries to other law enforcement officers indicated that Marshall had been a hit man in a motorcycle gang. The Government said it was told that a 1978 Canadian Broadcasting Company documentary identified Marshall as a member of the Outlaws motorcycle gang and contained an interview with a former member of that gang who admitted he had been a hit man and said Marshall was sent to Montreal in 1978 to avenge the death of another gang member at the hands of the Hell's Angels motorcycle gang. The Government also read a teletype from an Ontario detective, Terry Hall, which stated that Marshall had been arrested for weapons and immigration offenses along with other Outlaws. Hall interviewed Marshall

---

1. Section 922 reads in pertinent part:

(g) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 . . . .
to ship or transport any firearm or ammunition in interstate or foreign commerce.

(h) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 . . . .
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

after the arrest. Hall later met Marshall in Daytona Beach, Florida, during "Bike Week." The teletype stated that Marshall told Hall he had killed before and would kill Hall if he had the chance. The teletype also said that reliable sources had told Hall that Marshall was an enforcer for the Outlaws and had carried out contract killings for other organized crime people.

Finally, the Government reported that an Illinois law enforcement investigator said an informant had told him that Marshall was an enforcer for the Outlaws.

Marshall chose not to respond to the Government's evidence. When the court sentenced Marshall, it stated that it was satisfied that the hearsay information presented by the Government was reliable and that the information, coupled with Marshall's felony record, justified a substantial period of incarceration.

## II.

Marshall appeals his conviction on the count charging him with transportation of a firearm. He argues that the evidence was insufficient to sustain his conviction, and therefore the trial court erred in denying his two motions for judgment of acquittal pursuant to Fed.R.Crim.P. 29.[2] There was no direct evidence as to how the rifle was moved from Wisconsin to Illinois. Marshall argues that he did not have actual possession of the rifle in Illinois, nor did the time he spent at Cannon's apartment establish that he had constructive possession of the rifle at Cannon's apartment. Marshall moved for judgment of acquittal at the close of the Government's case and again at the close of all evidence. Marshall admits that the rifle moved in interstate commerce, but asserts that the jury could only speculate as to whether Marshall was the one who transported the rifle.

The standard of review in deciding whether the trial court should have granted Marshall's motions for judgment of acquittal under Fed.R.Crim.P. 29 is

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government ... bear[ing] in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences."

*United States v. Blasco,* 581 F.2d 681, 684 (7th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978), *quoting United States v. Rojas,* 554 F.2d 938, 943 (9th Cir. 1977). *See also United States v. Beck,* 615 F.2d 441, 447–48 (7th Cir.1980). We view the evidence against Marshall as sufficient to allow the district court to deny Marshall's motions for judgment of acquittal.

■ Marshall's conviction for *receiving* the rifle, which he does not appeal, indicates that the jury believed Marshall's companion, who said that Marshall took possession of the rifle in Wisconsin. The police discovered the same rifle in Cannon's apartment in Illinois about four months later. Marshall was in the apartment when the warrant was executed. He had been staying there from time to time, he kept personal belongings there, and Cannon testified Marshall was the only person other than herself and her daughter who entered and left the apartment at will. The evidence against Marshall was circumstantial, but that alone does not mean the evidence was insufficient to sustain a conviction. *E.g., United States v. Poland,* 659 F.2d 884, 886–87 (9th Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981); *United States v. Little,* 562 F.2d 578, 580 (8th Cir.1977). The district court did not err in denying Marshall's motions for judgment of acquittal.

---

**2.** Rule 29 reads in pertinent part:
(a) Motion Before Submission to Jury. . . . The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

## III.

Marshall's other point of appeal is that his sentencing hearing was improper. He argues that the district court should not have considered the Government's references to the Canadian Broadcasting Company program and to the Illinois law enforcement official's report, and the court should not have considered the teletype from the Ontario detective, Terry Hall. These reports were hearsay, and Marshall argues that they required a mini-trial on charges unrelated to those for which he was being prosecuted. Marshall also argues that the harm was not ameliorated by the district court's offer to let Marshall respond to the charges and that in order for that offer to be meaningful, Marshall had to give up his fifth amendment privilege against self-incrimination.[3] Marshall asserts that the district court's consideration of this evidence denied him due process and was an abuse of discretion.

We first note that there is little limit on the type of information the district court can consider in sentencing. 18 U.S.C. § 3577 (1976) provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This court has recently recognized the great discretion a trial judge has in sentencing and the limitations the due process clause imposes:

> The broad scope granted by § 3577 has been held to authorize trial judges to rely on a wide range of information, including, for example, alleged criminal activity for which the defendant has not been prosecuted .... There are two recognized due process limitations, however, on the degree to which the trial court can rely on convictions obtained without the benefit of counsel, see, e.g., United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (error to consider un-

constitutionally obtained prior felony conviction), or on information which is inaccurate, Townsend v. Burke, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) (error to base sentencing determination on misinformation submitted by prosecution when uncounseled defendant had no opportunity to prevent court from being misled); but cf. United States v. Leonard [589 F.2d 470 (9th Cir.1979)] (failure to challenge accuracy of presentence report waives error).

United States v. Plisek, 657 F.2d 920, 926 (7th Cir.1981). This court has also held that it will not disturb the sentence imposed by the trial court except on a plain showing of gross abuse. United States v. Hedman, 630 F.2d 1184, 1201 (7th Cir.1980), cert. denied, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981).

In the instant case the trial court's consideration of hearsay evidence did not deprive Marshall of due process because the information was relevant and the court could reasonably believe it was reliable and Marshall was given an opportunity to rebut the information. Sentences are intended to be tailored to the individual. See Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). Among the factors to be considered is the possibility of rehabilitation. Hedman, 630 F.2d at 1201. Information concerning a defendant's life and characteristics is "[h]ighly relevant—if not essential—to [the court's] selection of an appropriate sentence." Williams, 337 U.S. at 247, 69 S.Ct. at 1083. Whether Marshall is a murderer, or has planned murder, or has threatened murder are all relevant to the sentencing court's determination of Marshall's chances for rehabilitation.

As to the reliability of the information, the sentencing court specifically found that the information was reliable. This conclusion has ample support in the record. The Government obtained some of its information from law enforcement authorities.

---

**3.** The fifth amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself ...."

Even though the information was hearsay, the fact that the providers of the information were law enforcement officials would indicate that they were accurately relating the information they had. *See United States v. Beusch,* 596 F.2d 871, 874 (9th Cir.1979). Furthermore, there were indicia of reliability of the declarations which were related to the Government. For instance, the teletype from Detective Hall informed the sentencing court of Marshall's own admissions that he was an enforcer, had killed before, and would kill Hall. Also, in the interview on the Canadian Broadcasting Company program with the former member of the Outlaws, the declarant made statements against his penal interest by admitting that he had been a hit man himself. The sentencing court acted within the scope of its discretion in finding that the Government's information was reliable.

 Marshall was given an opportunity to rebut the information the Government presented, an opportunity he chose to forego. Marshall contends that a reply on his part would have forced him to waive his fifth amendment privilege against self-incrimination. Marshall's contentions are unfounded. Marshall is apparently suggesting that the fifth amendment privilege against self-incrimination prohibits a sentencing court from considering the Government's evidence when the defendant presents no evidence—by his own testimony or otherwise—to rebut the Government's presentation. Marshall was not compelled to testify against himself, nor was he punished for not testifying on his own behalf. Marshall, like any defendant who chooses not to testify, took the chance that the uncontradicted Government testimony would be deemed credible. If we were to adopt Marshall's argument, the privilege against self-incrimination would be a way to completely rebut the Government's evidence without the defendant presenting any evidence of his own. The privilege against self-incrimination has never been so construed. The opportunity to rebut the Government's information adequately protected Marshall's rights. *See United States v. Harris,* 558 F.2d 366, 374 (7th Cir.1977).

For the foregoing reasons, the conviction and sentence imposed by the district court are affirmed.