UNITED STATES of America, Plaintiff,

v.

Joseph A. BERTUCCI, Norah S. Bertucci
and Charles W. Lawrence,
Jr., Defendants.

No. 89–CR–35.

United States District Court,
E.D. Wisconsin.

Feb. 9, 1990.

Nathan A. Fishbach, Asst. U.S. Atty.,
Milwaukee, Wis., for plaintiff.

Terry E. Mitchell, Mitchell, Baxter &
Zieger, S.C., Milwaukee, Wis., for Joseph
and Norah Bertucci.

Thomas E. Brown, Gimbel, Reilly, Guerin
& Brown, Milwaukee, Wis., for Charles
Lawrence, Jr.

## DECISION AND ORDER

WARREN, Chief Judge.

Before the Court is the defendants' motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), and an issue of law raised at a Fed.R.Crim.P. 32 hearing.

## I. BACKGROUND

On March 7, 1989, a federal grand jury returned an indictment against defendants Joseph A. and Norah S. Bertucci and Charles Lawrence, Jr. The indictment contained 25 counts, alleging that the defendants conspired to impede the Internal Revenue Service in violation of 18 U.S.C. § 371, and charging that the defendants filed false individual, joint, corporate, and partnership tax returns for the years 1982 through 1984 in violation of 26 U.S.C. § 7206. A jury trial commenced in this Court on September 25, 1989. On October 19, 1989, the jury returned a verdict, finding Joseph Bertucci guilty on Counts 1, 9, 10, 12, 15, 17, and 19; Norah Bertucci guilty on Counts 1, 13, 14, 16, and 18; and Charles Lawrence guilty on Counts 1, 8, 11, 13, 15, 17, and 19. *See* Government's Memorandum in Response to Defendants' Post–

Verdict Motion pp. 2–3. The jury acquitted the defendants on the remaining counts.

The defendants have moved this Court for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), which provides:

(c) **Motion After Discharge of Jury.** If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

■ The law on such a motion is clear. Inconsistency in a jury's verdict is not a valid ground for granting a defendant's motion for judgment of acquittal. *U.S. v. Reed*, 875 F.2d 107, 110–11 (7th Cir.1989); *U.S. v. Abayomi*, 820 F.2d 902, 907 (7th Cir.1987). In reviewing a ruling on a motion for judgment of acquittal based on a challenge to the sufficiency of the evidence:

"[T]he test that the court must use is whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendants] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government ... bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences.'"

*U.S. v. Marquardt*, 786 F.2d 771, 780 (7th Cir.1986) (citations omitted) (cited in *U.S. v. Reed*, 875 F.2d at 111). " 'This review should be independent of the jury's determination that evidence on another count was insufficient.' " *U.S. v. Torres*, 809 F.2d 429, 432 (7th Cir.1987) (quoting *U.S. v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 478, 83 L.Ed.2d 461, 470 (1984)).

## II. DISCUSSION

■ This Court states preliminarily that although the defendants have not brought their motion within the seven days Rule 29 requires, the government does not object to the date the defendants filed the motion, and this Court finds no reason why it should not be considered.

The defendants conclude that their acquittal on the individual and partnership return counts so eroded the factual basis for their conviction on the corporate return and conspiracy counts that the guilty verdicts cannot stand. Thus, the essence of the defendants' motion is not that the inconsistency in the jury's verdict provides for a judgment of acquittal, which *Reed* clearly precludes, but that the government's evidence at trial did not support the jury's guilty verdict on the above-delineated counts. The government has responded by relating the evidence it adduced at trial. This Court's task is to determine whether the government produced relevant evidence at the trial from which the jury could reasonably find the defendants guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government, remembering that it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

The defendants assert that the jury rejected the net worth case against them, and that the specific items of evidence the government presented were insufficient on which to base a guilty verdict. The defendants point to what they consider to be the chief weakness in the government's "specific items" case: The defendants introduced into evidence another set of the daily sales sheets from a different six-month period which showed that the defendants had overreported their income based on the government's same theory. The defendants conclude that no rational jury could have based a guilty verdict upon it for a single year, much less three years.

The government responds by summarizing the evidence it produced. *See* Government's Memorandum pp. 8–10 ("B. Book-

store Operations"); pp. 10–12 ("C. Daily Sales Sheets"); and pp. 12–13 ("D. Concealment of Funds"). Viewing the evidence in a light most favorable to the government, as this Court must in a Rule 29 motion at this stage, these recitations comport with this Court's recollection of the evidence. Specifically, it is within reason for the jury to have found the defendants guilty of underreporting corporate income, as the evidence adduced at trial viewed in the government's favor could support the conclusions that: (1) the operation of the bookstores resulted in the defendants depositing only a portion of the receipts generated by the token sales in the bookstores' corporate bank accounts; and (2) the daily sales sheets reflected that the defendants deposited only a portion of the receipts generated by the token sales in the bookstores' corporate bank accounts. Moreover, it is within reason for the jury to have found the defendants guilty on the conspiracy count, as the evidence adduced at trial viewed in the government's favor could support the conclusions that: (1) the defendants diverted substantial receipts from the bookstores for their personal use, concealing and disguising these funds (see Government's Memorandum pp. 12–13); and (2) it follows from the net worth method that the likely source of the defendants' unreported income was funds generated from the film booths at the two bookstores (see Government's Memorandum pp. 15–18 [as to Paradise One, Inc. and LOK, Inc.]). Although the defendants point out that the jury must have rejected the net worth method as proof to support the allegations in the counts regarding individual and partnership returns, it does not follow from the jury's rejection of that method of proof on those counts that the jury also rejected the method for the counts on which they returned guilty verdicts. Finally, it is within reason for the jury to have found the defendants guilty on the corporate return and conspiracy counts, as the evidence at trial viewed in the government's favor could support the conclusions that: (1) the Morel Fry loan of $53,400.00 was a sham (see Government's Memorandum pp. 20–26); and (2) the defendants did not have cash

accumulations as they testified at trial prior to January 1, 1982, and thus that the likely source of the defendants' unreported income was funds generated from the film booths at the two bookstores (see Government's Memorandum pp. 27–29).

The defendants also argue that the weakness in the government's "specific items" case (that the defendants introduced into evidence another set of the daily sales sheets from a different six-month period which showed that the defendants had overerreported their income based on the government's same theory) means that no rational jury could have based a guilty verdict upon it for a single year, much less three years. But this Court in ruling on the defendants' motion must "bear in mind that 'it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences.'" *Marquardt*, 786 F.2d at 780. It is within the jury's province to reasonably infer from the evidence presented that the underreporting of corporate income derived from token sales existed in all three years for both corporations at issue. *See* Government's Memorandum pp. 15–18. Although the government only presented daily sales sheets for a certain period that did not cover all three years, and the defendants presented conflicting evidence, it is the jury's determination that controls on the possible underreporting for both corporations in all three years, based not only on the daily sales sheets, but the oral testimony and all other evidence at the trial (see above six conclusions). This Court is not to invade the jury's province on a Rule 29 motion unless no evidence supports their conclusions and the inferences the jury must have reached to conclude guilt were unreasonable. The defendants have not demonstrated such a complete lack of evidence or the unreasonableness of the possible conclusions.

### III. RULE 32 EVIDENCE

■ At a Rule 32 hearing held in this action on Friday, January 26, 1990 at 10:00 a.m., the defendants presented a question of law which they assert controls the sen-

tencing procedure that remains to be completed in this case. The issue is the propriety of the Court considering evidence submitted in support of those counts on which the jury acquitted the defendants.

The defendants assert such evidence should not be considered. The rationale allowing a sentencing court to consider acquitted charges goes as follows: An acquittal is not a finding that the offense was not committed, but rather a finding that the government did not prove the offense by proof beyond a reasonable doubt. Under this rationale, the sentencing court must reconsider all evidence under the preponderance of the evidence standard to determine whether the defendants actually committed the acts of which they were acquitted. Because the facts supporting the acquitted charges in this case are disputed, the defendants assert that an inconsistency in the level of proof necessary for punishing a person for a criminal offense, as well as an administrative nightmare, will result. The defendants advance that allowing consideration of the disputed facts underlying an acquittal will vitiate the jury verdict. Further, the alternative will be for this Court to hold a separate evidentiary hearing at each sentencing, "in effect a sentencing trial," at which each party would present evidence calculated to meet the less stringent burden of proof. The defendants point out that this would be a logistical disaster, as it would require the presence of all witnesses, the retaking of testimony, and perhaps the taking of additional testimony.

The government concludes that under 18 U.S.C. § 3577, this Court has wide discretion in considering information at sentencing. *See U.S. v. Marshall*, 719 F.2d 887, 891 (7th Cir.1983) (Seventh Circuit held "that the sentencing judge properly could rely upon [evidence regarding threats made by a defendant against others] if it first determined that the information was reliable and allowed the defendant an opportunity to rebut the information." *U.S. v. Nowicki*, 870 F.2d 405, 407 (7th Cir.1989)). The rationale for considering this evidence is that as long as the information that "the sentencing judge considers has sufficient

indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." *U.S. v. Marshall*, 519 F.Supp. 751, 754 (E.D.Wis.1981) (citations omitted). Considering the Seventh Circuit's latest pronouncement in *U.S. v. White*, 888 F.2d 490 (7th Cir.1989), as well as its ruling in *U.S. v. Cardi*, 519 F.2d 309, 314 n. 3 (7th Cir. 1975), the government avers that based upon § 3577, this Court can consider all evidence that was elicited during the trial which it deems reliable.

Section 3577 of Title 18 has been transferred within the United States Code. It now resides at § 3661. That section provides:

**Use of information for sentencing**

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

The courts that have interpreted § 3661 and its predecessor § 3577 have given trial courts broad discretion in considering information at sentencing. In *U.S. v. White*, 888 F.2d 490 (7th Cir.1989), the Seventh Circuit's latest pronouncement on this issue, the court did postulate that "it might make sense to treat an acquittal as a bar to avoid both nice questions of proof and the appearance of inconsistency." *Id.* at 499. More to the point, however, the court stated:

Several courts of appeals, including ours, have allowed district judges to augment sentences after concluding that the defendants really did things of which they had been acquitted. *United States v. Cardi*, 519 F.2d 309, 314 n. 3 (7th Cir. 1975); *see also United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985) (collecting cases); *cf. United States v. Dowling*, 855 F.2d 114 (3d Cir.1989) (prosecution may use as substantive evidence under Fed.R.Evid. 404 offense of which the defendant has been acquitted),

*cert. granted,* —— U.S. ——, 109 S.Ct. 1309, 103 L.Ed.2d 579 (1989).

*Id.*

An examination of the other relevant Seventh Circuit case law on this issue yields the conclusion that evidence pertaining to counts on which the jury acquitted the defendants may be received and considered by the Court under the preponderance of the evidence standard. The Seventh Circuit held in *Cardi* that a sentencing court did not err in considering information regarding a defendant's association with certain criminal activities of which he had been acquitted. 519 F.2d at 314, n. 3. A case on which the court relied in *Cardi,* *U.S. v. Sweig,* 454 F.2d 181, 184 (2d Cir. 1972), delineated the rationale behind permitting a sentencing judge to consider information relating to a crime for which a defendant had been acquitted:

> In fact the kind of evidence here objected to may often be more reliable than the hearsay evidence to which the sentencing judge is clearly permitted to turn, since unlike hearsay, the evidence involved here was given under oath and was subject to cross-examination and the judge had the opportunity for personal observation of the witness.

In interpreting § 3577, the Seventh Circuit stated in *U.S. v. Ray,* 683 F.2d 1116, 1120 (7th Cir.1982):

> A sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Information which may be permissibly considered includes criminal activities for which the defendant has not been prosecuted, illegally obtained evidence, criminal charges of which the defendant has been acquitted, and uncorroborated hearsay evidence which the defendant has had an opportunity to rebut. *United States v. Plisek,* 657 F.2d 920, 926–27 (7th Cir. 1981). There are, however, due process limitations on the degree to which the judge may rely on convictions obtained

without the benefit of counsel, or convictions based on materially false or unreliable information. *Id.* at 924.

This survey of the case law illustrates that although the defendants have pointed to a statement in the *White* case on which the Seventh Circuit may some day formulate the holding that the defendants seek, namely that evidence cannot be relied upon regarding criminal charges of which the defendant has been acquitted, that court has not yet done so. Further, this Court is not convinced that it should so broadly interpret the law. After considering: (1) the plain meaning of § 3661; (2) the Seventh Circuit's statements in *White, Cardi, Ray,* and *Marshall* which allow a sentencing judge to consider criminal charges of which the defendants have been acquitted; indeed, the sentencing judge is allowed to consider evidence far less reliable than that at issue in this case, including hearsay, illegally obtained evidence, and criminal activities for which the defendants have not been prosecuted; (3) the fact that the evidence on the acquitted accounts has been tested for reliability, and the defendants had the opportunity to rebut that evidence, *see Sweig,* 454 F.2d at 184; and (4) the inapplicability of the exception for the due process limitations on the degree to which the judge may rely on convictions obtained without the benefit of counsel, or convictions based on materially false or unreliable information; this Court is satisfied that in sentencing the defendants, it may consider evidence adduced at trial regarding counts on which the jury acquitted the defendants. The Court is to consider this evidence under the preponderance of the evidence standard.

The defendants state that allowing the sentencing judge to reconsider all the evidence—including that proffered for acquitted counts—under the preponderance of the evidence standard would result in an inconsistency in the level of proof necessary to punish a person for a criminal offense, as well as an administrative nightmare. The defendants relate that the sentencing judge would be placed on the horns of a dilemma: either he could determine the implications of the jury's verdict of

acquittal without rehearing, which would require an impermissible invasion of the jury's function, or the court would have to hold a separate evidentiary hearing at each sentencing at which each party would present evidence calculated to meet the less stringent burden of proof, resulting in huge logistical problems.

The dilemma is illusory, however. An evaluation of the first horn demonstrates that the sentencing judge, by considering evidence as to counts on which the jury acquitted the defendants, is not holding a separate one-man retrial; he is only considering all evidence that has been presented during the trial against the reduced evidentiary level of preponderance of the evidence. *See Sweig,* 454 F.2d at 184. The Seventh Circuit law is settled that if the sentencing judge finds that the government has borne the burden of demonstrating guilt by a preponderance of the evidence, the evidence of those crimes can be taken into account as part of the totality of the factors that inform the judge's decision as to the proper sentence. The number of counts on which the defendants have been convicted does not increase. This conclusion is supported by a solid rationale: if the information that the sentencing judge considers has been tested and found reliable to support probable accuracy (by, for example, cross-examination), the information may properly be taken into account in sentencing. *See Marshall,* 519 F.Supp. 751, 754 (E.D.Wis.1981). The defendants had such an opportunity to challenge all of the government's evidence at trial. The reliable evidence that is the dross of the crucible of cross-examination should not be ignored, but considered at sentencing. It should be remembered that all evidence the defendants have proffered on the acquitted counts is considered as well.

The second horn of the alleged dilemma, when examined, also fails to confound. The evidence at trial need not be presented again considering the new, lower evidentiary standard. This Court has taken copious notes regarding the presentation of evidence, and in sentencing the defendants can weigh the testimonial and other demonstrative evidence in light of the new evidentiary norm without having it present-ed again. A "sentencing trial" is not necessary, as the evidence need not be recalculated to meet a less stringent burden of proof. Although it is evaluating the level of the evidence against a lesser burden than was assumed at trial, the Court is considering evidence that has already been cross-examined. Nothing is lost in terms of a full determination of credibility or reliability, as this Court does not opine that defense counsel would or could be more stringent in their interrogation just because the evidence is evaluated against a less stringent standard.

The evidence offered to prove the failure to report partnership and individual income can be included in the presentence report and considered by the Court in sentencing the defendants on the corporate and conspiracy counts. Although the defendants can rely on the statement in *White* that "nice questions of proof and the appearance of inconsistency" can be avoided by not including and considering such evidence, the Seventh Circuit case law provides for its consideration. Notwithstanding the defendants' policy arguments of relegating the jury verdict to a forum for establishing a defendant's maximum exposure and impermissible invasions of the jury's function, this Court determines that it should consider all evidence as it has been presented at trial, including that on the acquitted counts, in its sentencing determination.

## IV. SUMMARY

For the reasons mentioned above in part II, the defendants' motion for a judgment of acquittal under Fed.R.Crim.P. 29(c) is DENIED. Also, the defendants' objection to this Court considering evidence at trial regarding counts on which the jury acquitted the defendants is OVERRULED. A rehearing on the evidence is deemed unnecessary. The defendants may of course make a standard presentation under Rule 32 at or before the time of sentencing.

SO ORDERED.