**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodney Eugene BURNS,**
**Defendant–Appellant.**

**No. 89–50255.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1990.

Decided Jan. 23, 1990.

---

Knut Johnson, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Judith S. Feigin and Shane Harrigan, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before GOODWIN, Chief Circuit Judge; FARRIS and NOONAN, Circuit Judges.

PER CURIAM:

Rodney Burns pled guilty to one count of violating 18 U.S.C. § 1029(a)(2) (fraudulent use of access device) and appeals from the resulting 30–month sentence.

Using fraudulently obtained credit card numbers, Burns ordered computer equipment. Before he was apprehended, he had obtained goods for which billings exceeded $107,423. He contends inter alia that his peculations were improperly calculated because sales tax and shipping charges should not have been included in the "loss" column. He says the victim seller did not "lose" these amounts. His other attacks on the sentence are equally ingenious and equally unpersuasive.

The presentence report prepared in Burns's case calculated his base level as six and, pursuant to Sentencing Guideline § 2F1.1(b)(1)(G), added six more points because the loss was between $100,001 and $200,000. Another two points were added because Burns's scheme defrauded more than one victim and involved more than minimal planning, and two points were deducted for acceptance of responsibility. The total offense level was therefore twelve. As an ex-convict, Burns had a criminal history category of VI. The applicable guideline sentence range was therefore 30–37 months.

Burns challenged the probation report, claiming that the loss involved was no more than $50,000. He also asked that his sentence be made concurrent to the one he was serving after violating probation for the state offenses of which he had previously been convicted.

A. *Inclusion of Sales Tax and Shipping Costs under 2F1.1*

18 U.S.C. § 3742(a)(2) provides for review of sentences imposed as a result of an incorrect application of the Sentencing Guidelines ("the Guidelines"). The interpretation of "loss" under § 2B1.1 of the Guidelines is a question of law.

Offenses involving fraud or deceit are covered under Guideline § 2F1.1. The base offense level assessed for crimes under this section varies with the amount of the loss occasioned by the offender. Under 2F1.1(b)(1)(G), if the loss incurred is between $100,001 and $200,000, six points are added to the offense level; if between $50,001–$100,000, five points are added.

Loss under § 2F1.1 incorporates the definition of loss discussed in the Commentary to § 2B1.1. The Commentary to 2B1.1 de-

fines "loss" as "the value of the property taken, damaged, or destroyed." It goes on to say that, "[o]rdinarily, when property is taken or destroyed, the loss is the fair market value of the particular property at issue." Burns argues that the common understanding of fair market value is "the amount a willing buyer will pay for an item." By this definition, he says, sales tax and shipping costs must be excluded because those portions of the buyer's payment go to a third party, not to the seller.

Burns fails to recognize that in ordinary retail trade the amount that a willing buyer is prepared to pay includes the tax and shipping costs, regardless of who ultimately receives that fraction of the purchase price. Moreover, other parts of the Commentary to § 2B1.1 contradict the suggestion that the Sentencing Commission meant to exclude tax and shipping charges in the calculation of loss. Application Note 4 of the Commentary to 2B1.1 states that "[t]he loss includes *any* unauthorized charges made with stolen credit cards" (emphasis added), and Application Note 3 provides that "[t]he loss need not be determined with precision, and may be determined from any reasonably reliable information available." *See also* Application Note 7, Commentary to § 2F1.1 (the probable or intended loss that the defendant meant to inflict should be used if it is larger than the actual loss). There is no indication from the Commission's commentaries that it intended the district judge to engage in the kind of parsing of the loss figure that Burns's position would require.

In addition, as the government points out, Burns failed to present the district court with any calculation of the applicable shipping costs. This court will not allow a pleader to make his first presentation of material figures to this court, when he had ample opportunity to do so in the trial court. *See United States v. Monaco,* 852 F.2d 1143, 1150 (9th Cir.1988).

B. *Evidence of Burns's Attempt to Order Additional Computer Equipment*

■ As noted in the preceding section, the district court is directed under the Sen-

tencing Guidelines to use the amount of the probable or intended loss that the defendant was attempting to inflict for sentencing purposes, if that amount can be determined and it is larger than the actual loss. Application Note 7, Commentary to § 2F1.1. *See also United States v. Wills,* 881 F.2d 823, 827 (9th Cir.1989). In this case, the government presented evidence that Burns had attempted to order $25,000 of additional equipment from a seller who did not send the goods because of dawning suspicion about Burns. Burns argued to the district court, and contends again here, that the evidence was insufficient to conclude that the additional orders had been placed by him. He claims that because the district court relied upon uncorroborated evidence in making its sentencing determination, his sentence is defective.

This court reviews a finding of fact underlying a sentence determination for clear error. *Wills,* 881 F.2d at 825. The evidence supporting the government's claim about the additional $25,000 worth of equipment was contained in an investigative report prepared by Secret Service agents detailing the losses suffered by a seller called CompuAdd. The company had informed the agents that it had shipped over $25,000 worth of computer equipment to San Diego and that about $30,000 more had been ordered but not sent. The orders and shipments all involved three addresses in San Diego which Burns admitted using to receive the equipment he ordered with the wrongfully obtained credit card numbers.

Because the addresses to which the additional equipment was to be sent were the same ones used by Burns for the shipments he had previously received, the district court concluded that Burns had ordered the additional equipment. The court was entitled to consider that fact in its sentencing determination.

■ Burns also claims that the information in the Secret Service report was unreliable and uncorroborated hearsay which the district court was not entitled to consider. Section 6A1.3 of the Guidelines allows the

judge to consider any information in his sentencing determination, "so long as it has 'sufficient indicia of reliability to support its probable accuracy.'" Commentary to § 6A1.3, *quoting United States v. Marshall*, 519 F.Supp. 751 (D.C.Wis.1981), *aff'd*, 719 F.2d 887 (7th Cir.1983). In determining the relevant facts, sentencing judges are not restricted to evidence that would be admissible at trial. Section 6A1.-3, *citing* 18 U.S.C. § 3661. There was no error in using the investigative report.

### C.  Imposition of the Consecutive Sentence

■ After he pled guilty to one count in this case, but prior to sentencing, Burns's state court probation was revoked and he was sentenced to two years in state custody. Burns contends that under Guideline § 5G1.3, the district court should have made the sentence imposed in this case run concurrently with the state sentence.

§ 5G1.3 states that:

If, at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentence for the instant offense[s] shall run consecutively to such unexpired sentences, unless one or more of the instant offense[s] arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except as otherwise required by law.

Under this section, if the offense with which Burns is charged here "arose out of the same transactions or occurrences" as the unexpired sentences he must serve as a result of the probation revocation, then the sentences should run concurrently. Burns claims that the revocation of his probation was based on his federal crime and that the district court therefore erred in mandating that his sentence for the violation of 18 U.S.C. § 1029(a) run consecutively to the unexpired sentences on the state charges.

Contrary to Burns's claim, however, the evidence established, and the district court found, that the probation revocation was based on Burns's failure to make restitution as ordered in the state cases. The court found that revocation was not based on the federal charges against Burns in the instant case. Given the absence of any contradictory evidence, the district court's finding on this issue was not clearly erroneous. 18 U.S.C. § 3742(d) (Supp. II 1984). *See United States v. Darud*, 886 F.2d 1034, 1036 (8th Cir.1989) (district court committed no error in sentencing the defendant to a prison term running consecutively to a reinstated term of imprisonment stemming from revocation of the defendant's parole, where unexpired sentence arose not out of incident giving rise to the instant sentence, but from a prior conviction).

■ Moreover, as the government points out, even if the two sentences had arisen out of the same transaction or occurrence, the sentence imposed here would be upheld. This court has recently ruled that, although Guideline § 5G1.3 appears to *require* concurrent sentences if the same transaction is involved, it is subservient to 18 U.S.C. § 3584(a), which makes the decision whether to impose a consecutive or concurrent sentence a matter of the trial judge's discretion. *Wills*, 881 F.2d at 826. And although the district court here determined that imposition of a consecutive sentence would comply with § 5G1.3 because the probation revocation was based on events independent of the instant crime, it also made a finding that the circumstances warranted the exercise of its discretion to impose a consecutive sentence: "I also will find that because of this defendant's very bad record, it goes on for pages, and to encourage the deterrence of further crime, that it warrants a consecutive sentence."

AFFIRMED.