912 F.2d 466
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joe Lewis DYCUS, Defendant-Appellant.
 No. 89-6594.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1990.
 
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and GIBBONS,* District Judge.
 PER CURIAM.
 
 
 1
 Joe Lewis Dycus appeals his sentence, imposed by the district court after Dycus pleaded guilty to possession of an unregistered sawed-off shotgun. He argues that the district court erred by departing upward from the Sentencing Guidelines and by ordering his federal sentence to run consecutively to his current 45-year state sentence for armed robbery. Finding that the guidelines permit Dycus's sentence, we affirm.
 
 
 2
 * On April 24, 1988, Dycus was arrested in Nashville for driving with a suspended license. The police searched his car and found a sawed-off shotgun that had not been registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. Sec. 5861(d); for this offense he was charged in federal court. On August 7, 1989, Dycus entered a guilty plea.
 
 
 3
 On October 19, 1989, the date set for sentencing, the court advised the parties that it had studied the presentence report. The report indicated that Dycus had 16 criminal history points, placing him in criminal history category VI.[1] With an adjusted offense level of 10, the guidelines range for Dycus was 24-30 months. Although the report did not recommend a departure, the court announced that it was considering departing upward. The court was concerned that Dycus's criminal history category did not accurately reflect the extent of his past involvement with illegal firearms. The court noted that in 1974, at the age of 23, Dycus was convicted in that same district (the Middle District of Tennessee) of possession of a firearm as a convicted felon. In 1982, at age 32, Dycus was convicted again in the same court of possession of a firearm as a convicted felon and conspiracy to distribute controlled substances. The court observed that this offense was the third firearms conviction in that court. The sentencing hearing was continued until November 28, 1989 so that the parties could address the appropriateness of an upward departure.
 
 
 4
 On November 28, the court sentenced Dycus to 46 months in prison, "consecutive to the sentence presently being served under the judgment of the ... Courts of Kentucky." This departure from the normal range of 24-30 months was based on U.S.S.G. Sec. 4A1.3, which permits an upward departure for a defendant whose "criminal history category seriously under-represents the seriousness of the defendant's criminal history...." It was also based on a revised criminal history score of 19, reflecting the recent Kentucky robbery conviction. The court stated:
 
 
 5
 In this case, the defendant may be properly characterized as a persistent firearms violator with, as I recited, a long history of these violent offenses, drug related offenses. The court deems this to be an atypical case as the term is used in the Guidelines, and given this background in history, an upward departure, departure is merited, and that the case, even though he is presently under a substantial sentence in the State of Kentucky, which is presently on appeal, nevertheless the sentence in this case should appropriately consider his background, and for that reason the Court will make an upward departure in the range of 37 to 46 months, which the Court believes will appropriately address the seriousness of this case, given the defendant's criminal history background and history of persistent violator [sic] of the firearms laws of this country.
 
 
 6
 The court then determined that the guidelines inadequately account for the circumstances of this case, including its criminal history score of 19. (The maximum criminal history category is VI, which incorporates all history scores of "13 or more." U.S.S.G. Ch. 5, Pt. A, sentencing table.) To compensate for this deficiency, the court considered a hypothetical criminal history category VIII into which a criminal history score of 19 would fall. As every three additional criminal history points places a defendant in the next higher category, the court deemed a two-category increase for the six points above 13 to be appropriate. The court decided that an offense level of 10 and a criminal history category VIII would yield a range of 37-46 months; this range appears to have been borrowed from comparable combinations of offense levels and criminal histories on the sentencing table's matrix. The court determined that the top of the range was appropriate and sentenced Dycus to 46 months' imprisonment, to be served consecutively to the state sentence, pursuant to U.S.S.G. Sec. 5G1.3.
 
 II
 
 7
 * Congress has authorized departures from the sentencing ranges announced in the guidelines only where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. Sec. 3553(b). Only compelling reasons can support an upward departure. See United States v. Cervantes, 878 F.2d 50, 53 (2d Cir.1989). Departures should be rare. See United States v. Brewer, 899 F.2d 503, 506 (6th Cir.1990) (reversing a downward departure); United States v. Uca, 867 F.2d 783, 787 (3d Cir.1989).
 
 
 8
 Dycus argues that the district court inappropriately substituted its own opinion of an adequate sentence for a defendant with 19 criminal history points for the opinion of the Sentencing Commission. Dycus contends that the Commission explicitly intended Category VI to be an absolute maximum for defendants, no matter how many criminal history points they have. Furthermore, had the Commission intended a person to receive an enhanced punishment for his prior history of firearms convictions, Dycus believes that it would have so stated. The Commission did not hesitate to do so in the guidelines governing, for example, violent crimes or drug offenses. The Commission made an obvious decision, according to Dycus, not to include weapons possessions under the career offender provisions.
 
 
 9
 We reject Dycus's arguments because we believe that the departure here is warranted under the three-part test announced in United States v. Joan, 883 F.2d 491 (6th Cir.1989). In Joan, id. at 493, we adopted the test set out by the First Circuit in United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, 110 S.Ct. 177 (1989). First, we must review as a question of law the circumstances stated to support the departure to determine if they are sufficiently unusual to warrant departure. If so, the second step requires us to review the district court's factual findings that the particular circumstances held to warrant departure actually exist. Finally, we must measure the degree of departure by a standard of reasonableness. See United States v. Barnes, No. 89-6179, slip op. at 7 (6th Cir. Aug. 13, 1990). This "appellate review must occur with full awareness of, and respect for, the trier's superior 'feel' for the case.' " Joan, 883 F.2d at 494 (quoting Diaz-Villafane, 874 F.2d at 49). Analyzed under this 3-step approach, the district court's sentence was appropriate.
 
 
 10
 First, the circumstances are unusual enough to warrant departure. The policy statement in U.S.S.G. Sec. 4A1.3 states as follows:
 
 
 11
 The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.
 
 
 12
 Dycus's is such an egregious case. He has a criminal history score of 19. This score is well above the score required to place a defendant in Category VI.
 
 
 13
 In United States v. Belanger, 892 F.2d 473, 475 (6th Cir.1989), we held that an upward departure was warranted where the defendant had an adjusted offense level of 5 and a criminal history score of 29, more than twice the number needed to place him in the highest category. With an offense level of 5 and a criminal history Category VI, the guidelines would dictate a range of 9-15 months in prison; the district court sentenced Belanger to 24 months' imprisonment, and we approved the sentence. We believe that Dycus's 19 points and the repeated and serious nature of the firearms offenses similarly meet the threshold requirement in Joan necessary for a departure.
 
 
 14
 Under the second step in Joan, we do not find the district court's findings regarding the seriousness of Dycus's criminal record to be clearly erroneous. Dycus has a history of repeated violations involving firearms, including his commission of an armed bank robbery in Kentucky just after the commission of this federal offense in Tennessee, and a recent drug conviction. The district court found that the need for incapacitating Dycus was overwhelming:
 
 
 15
 The Court deems this defendant to be a defendant that is a danger to society. He is a persistent violator of the firearms laws of this country, with a history of violent criminal offenses, and simply should be incapacitated. And it is for this reason that the sentence is made consecutive to the state sentence, to insure removal of this defendant from the public. In the Court's view, he constitutes a danger, a menace, and simply should need to be confined, kept off the streets.
 
 
 16
 Dycus has not made a showing that these findings were in error.
 
 
 17
 This sentence also passes the third prong of the Joan test. The district court departed modestly in a structured way: since the district court felt that a two-category increase in criminal history was appropriate, it found a point on the table where a two-category increase from a term equivalent to the pre-departure range yields a 16-month increase in the prison term. The jump from a range of 24-30 months to a range of 37-46 months for a two-category increase is certainly permissible under the guidelines at various points along the matrix. The fact that at other points on the matrix, such a 16-month increase is not indicated does not render this departure unreasonable. Since the sentencing table contemplates an increase of 16 months for some two-category increases, the district court's departure here was reasonable. See United States v. Schmude, 901 F.2d 555, 560 ("the question of degree of departure is solely one of reasonableness"). Furthermore, the district court explained why it was departing two categories; under these circumstances, the sentence should not be disturbed.
 
 
 18
 In Belanger, we rejected Dycus's argument that the Commission intended Category VI to include all offenders with "13 or more" criminal history points. In holding that the district court appropriately relied on the defendant's extremely high criminal history score in departing from the guidelines, we stated:
 
 
 19
 Appellant argues in response that the Guidelines already contemplate his high score by placing in category VI all persons with a criminal history score of "13 or more." He interprets "or more" to mean that, regardless of a defendant's score, the range set by that category for someone of his base offense level sets the maximum allowable sentence. However, appellant's analysis is flawed in that it is directly contradicted by the Commissioner's statement that departure and sentencing above the range is allowable if the sentencing court finds the defendant's criminal history extreme enough to justify departure.
 
 
 20
 892 F.2d at 475-76 n. 1. As we approve the district court's finding that Dycus's criminal history was "extreme enough to justify departure," Dycus's contention is without merit.
 
 
 21
 We also find unpersuasive Dycus's argument that an enhanced punishment is not permitted because the guidelines did not include firearms offenses in the career offender provisions. U.S.S.G. Sec. 4B1.1 (the career offender section) is not the only tool provided by the guidelines for dealing with recidivists. U.S.S.G. Sec. 4A1.3, p.s., also contemplates enhanced punishments for defendants with serious criminal records; because we believe that this policy statement envisions the sort of upward departure made in this case, we affirm the sentence.
 
 B
 
 22
 Dycus next claims that the district court should have ordered that his federal sentence run concurrently with the Kentucky state sentence for armed robbery. He notes that the commentary to U.S.S.G. Sec. 5G1.3 gives discretion to the sentencing court in determining whether the federal sentence should be served concurrently or consecutively:
 
 
 23
 Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment. The court may consider imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under Sec. 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.
 
 
 24
 Under the guidelines, if the Kentucky offense and the federal offense had been prosecuted together in federal court, the combined sentence could not have been greater than 45 years. Therefore, Dycus argues that the court should have ordered him to serve his federal sentence concurrently with his state sentence.
 
 
 25
 While it is true that if the offenses were all treated as federal offenses Dycus would be sentenced to less than 45 years, he would be required to serve all of the federal sentence. It may not be assumed, by contrast, that Dycus will serve all of a 45-year sentence in a state, such as Kentucky, with the availability of early parole. See Ky.Rev.Stat. Sec. 439.340. U.S.S.G. Sec. 5G1.3 states that the combined sentence should approximate the actual total punishment, not the putative term of imprisonment. There is no assurance that concurrent sentences would accomplish this goal.
 
 
 26
 We find that the district court did not abuse its discretion in ordering the federal sentence to be served consecutively to the state sentence. The court felt that Dycus was a serious threat to society and that he should be incapacitated for a substantial period of time.
 
 
 27
 U.S.S.G. Sec. 5G1.3 uses doubly permissive language ("the court may consider imposing a sentence ...") (emphasis supplied), not mandatory language. The guidelines give courts the discretion to determine whether concurrent or consecutive sentences would be more appropriate. Dycus cites no case law to support his claim that the district court's decision to impose a consecutive sentence, under these circumstances, constituted an abuse of discretion. Cf. United States v. Burns, 894 F.2d 334, 337 (9th Cir.1990).
 
 
 28
 The sentence imposed by the district court is AFFIRMED.
 
 
 
 *
 The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 A supplement to the presentence report, dated November 8, 1989, indicated that Dycus's criminal history score should be increased three points to reflect an intervening state robbery conviction in Kentucky