959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tyronne McCRAW, Defendant-Appellant.
 No. 90-50664.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1992.*
Decided April 9, 1992.
 
 Before PREGERSON, D.W. NELSON, and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant Tyronne McCraw was convicted of attempted armed robbery of a savings and loan and forced accompaniment in violation of 18 U.S.C. §§ 2113(a), (d), (e), and of use of a firearm during a federal crime of violence in violation of 18 U.S.C. § 924(c). He was sentenced to a 480 month term of incarceration. McCraw appeals his conviction on Fourth Amendment and evidentiary grounds, and his sentence on the ground that the district court miscalculated the applicable guideline range and impermissibly departed from that range. We now affirm.
 
 BACKGROUND
 
 3
 McCraw, along with codefendant Brian Simms, decided to rob Southern California Savings and Loan by kidnapping Denise Adkins, an assistant manager at the bank. On Wednesday, February 21, 1990, McCraw and Simms broke into the Adkins home. They were equipped with Halloween masks, handcuffs, duct tape, an inoperative semi-automatic pistol and a large knife. Once in the house, they searched various closets and found an unloaded shotgun.
 
 
 4
 When Ms. Adkins returned home, the men, wearing the masks, tackled her and carried her into the house, blindfolded and gagged her, and bound her with duct tape. As she was tackled, she sustained a cut or split lip. Some time later, the defendants had Ms. Adkins place a call to her husband Dennis, a Los Angeles firefighter, to lure him home. When Mr. Adkins arrived, Simms held a knife to Ms. Adkins' throat, and ordered Mr. Adkins to the floor. The two men bound Mr. Adkins' ankles and wrists and face with duct tape, and carried him into a bathroom. They immobilized Mr. Adkins by placing an exercise bicycle on him.
 
 
 5
 McCraw and Simms kept the Adkins restrained in their home for nearly two days. According to the trial testimony of Simms and Adkins, during that time McCraw twice made sexually suggestive remarks to Ms. Adkins, and touched and fondled her chest. At one point, he removed Ms. Adkins' pants. Both times, McCraw's conduct was stopped by Simms, who told McCraw to leave her alone.
 
 
 6
 Early Friday morning, the defendants set out for the bank. After Ms. Adkins had dressed for work, they blindfolded her and placed her in the back seat of her car under a blanket. When they arrived in the bank staff parking area, Simms and McCraw put on their Halloween masks and took off Adkins' blindfold, and the three entered the bank. Soon thereafter, Ms. Adkins set off a silent alarm. When the police arrived, the defendants ordered Ms. Adkins to leave with them through a back door. Once outside, Ms. Adkins broke away, and McCraw and Simms ran off, followed by police officers.
 
 
 7
 Police officers apprehended Simms near the bank. McCraw, however, ran into the home of Judith Dewitte and Frederick Tulius. After a brief struggle with Dewitte and Tulius, defendant eventually gained control over them threatened them with his gun. He demanded their car keys and took off in their red 1989 Toyota. After he left, Dewitte found a Halloween mask on the floor of her livingroom.
 
 
 8
 Defendant was arrested on February 27 after a routine traffic stop. He was driving the red Toyota. He gave his name as Kendall Williams and said he knew the car was stolen, but that he had not stolen it. He was booked for joyriding and taken to the police station. At the station, he again gave the false name, then gave his real name and confessed to investigating officers his role in the bank robbery. He admitted to planning to rob the bank, but denied that he had agreed to kidnap the bank manager.
 
 
 9
 McCraw was convicted at trial on the basis of evidence obtained at the police station, the testimony of Simms, and the testimony of Ms. Adkins and the other victims. The trial court sentenced McCraw to 40 years incarceration. The court determined that McCraw's offense level was 31 and his criminal history category II. The court then departed upwards from that offense level by 24 points, raising McCraw's offense level to a total of 55, and gave McCraw a 480 month sentence.
 
 DISCUSSION
 I. The Conviction
 
 10
 Defendant argues that his conviction must be reversed because the district court should not have 1) admitted evidence of his sexual misconduct, and 2) admitted evidence against him obtained by the officers at the police station because it was obtained in violation of the Fourth Amendment. Both arguments are without merit.
 
 
 11
 We reverse a trial court's evidentiary rulings for an abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987). In this case, we find that even if the court erred in admitted the evidence of McCraw's sexual misconduct, such error was harmless because McCraw was convicted on the basis of overwhelming evidence against him. This evidence included the testimony of Simms and the several victims of the crimes. It also included Reebok sneaker prints in the Adkins' backyard that were matched to McCraw's sneakers, the Halloween mask found on the floor of the Dewitte/Tulius home, and finally, McCraw's own confessions to the police the night he was arrested. We are confident that the jury would have convicted McCraw even if it had never been exposed to testimony regarding his sexual misconduct.
 
 
 12
 McCraw challenges the admission of his confession made at the police station right after his arrest, alleging that 1) he was not advised of his Miranda rights, 2) the officers continued to interrogate him after he had invoked his right to a lawyer, and 3) the officers used physical violence against him in securing the confession. The government responds that four different officers read McCraw his rights on four different occasions, that McCraw never requested a lawyer, and that they never used any physical force against McCraw. Such evidentiary conflicts are for the trier of fact to resolve, and we defer to the district court's determination that the police officers were credible and McCraw "inherently implausible."
 
 
 13
 Based on the district court's findings of facts, we find no Fourth Amendment violations.
 
 II. The Sentence
 A. Standard of Review
 
 14
 Application of the Sentencing Guidelines is reviewed de novo. United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990). A district court's factual findings in support of a sentencing decision are reviewed for clear error. United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990). The district court's decision to depart from the applicable range is examined under a three-part test. First, the court's determination that it is permitted to depart is subject to de novo review. Second, the factual findings in support of the departure are reviewed for clear error. Finally, the extent of the departure is reviewed to see if it is reasonable within the meaning of 18 U.S.C. § 3742(e)(3) and (f)(2). United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc).
 
 B. Analysis
 
 15
 The district court determined that McCraw's criminal history category was II, and his adjusted offense level under the guidelines was 31. On the basis of aggravating circumstances, the court then departed upwards 24 points, leaving McCraw with a final offense level of 55. As an offense level of 55 is quite high, as a practical matter McCraw's sentence will only be reduced if we conclude that his offense level should have been 40 or less.[1]
 
 
 16
 Based on our examination of the district court's sentencing order and the record in general, we recognize that some of the district court's bases for upward departure present close questions. Because the district court carefully laid out the number of points assigned to each departure, we could address these individual departures and recalculate the offense level if we found it necessary. However, we decline to engage in this departure-specific examination because we find that well over 40 points are easily justified. In other words, even if we were to evaluate each of these close questions and determine that a lower offense level is applicable, any level we would calculate would still be sufficiently high to authorize the sentence the district court imposed. Accordingly, we affirm McCraw's sentence.
 
 
 17
 Despite McCraw's arguments, we find nothing to quarrel with in the court's initial calculation of an offense level of 31. Each adjustment is authorized by the guidelines and justified by the facts of this case. As to the court's upward departures, we agree that some present close questions. In particular, we think that in light of the fact that the court assessed a six-point departure on the basis of extreme conduct and additional points for the existence of multiple victims, the additional four-point departure on the basis that the guidelines do not adequately reflect the nature and severity of this crime may amount to double-counting. However, as stated above, we need not address these "close questions" because we find that the departures based on the restraint of more than one victim and for extreme conduct were both legal and warranted.[2]
 
 
 18
 On the basis of these two factors alone, the district court assessed a ten-point upward departure. That additional ten points raised McCraw's offense level from 31 to 41. A 41 point offense level combined with a criminal history category of II translates into a guidelines range of 360 months to life. The 480 month sentence was thus clearly within the legally permissible range. Therefore, we need not decide whether the district court properly assessed the additional 14 points because these ten points alone clearly justify the sentence imposed.[3]
 
 
 19
 The conviction and sentence are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 More specifically, any offense level over 43 warrants a sentence of 360 months to life. For McCraw's sentence to drop below this range, we would have to conclude that his offense level should have been 40 or less, as only at a level of 40 does the upper limit of the authorized range fall below 480 months
 
 
 [2]
 Guidelines Section 5K2.4 explicitly states that "If a person was abducted, taken hostage, or unlawfully restrained to facilitate commission of the offense or to facilitate the escape from the scene of the crime, the court may increase the sentence above the authorized guidelines range." Dennis Adkins was obviously restrained to facilitate the commission of this offense, and the four-point departure was thus warranted. Guidelines Section 5K2.8 authorizes departures where a defendant's conduct was "unusually heinous, cruel, brutal, or degrading to the victim." In light of the two and a half day ordeal the Adkinses suffered, we cannot say the court abused its discretion in assessing the six-point departure on this factor
 
 
 [3]
 McCraw also challenges his 40-year sentence on the ground that it violates the Eighth Amendment's prohibition of cruel and unusual punishment. This argument is unavailing. See Harmelin v. Michigan, 111 S.Ct. 2680, 2702 (1991) (finding that a mandatory life sentence for possession of 650 grams of cocaine did not violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 374 (1982) (approving forty-year sentence for possession with intent to distribute nine ounces of marijuana); United States v. Wilson, 787 F.2d 375 (8th Cir.), cert. denied, 479 U.S. 857 (1990) (affirming 50 year sentence for attempted bank robbery.)