972 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony D. CASIAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leo CASIAS, Defendant-Appellant.
 Nos. 90-50339, 90-50340.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1992.
Decided Aug. 19, 1992.
 
 Before POOLE, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM DISPOSITION*
 
 
 2
 Anthony and Leo Casias appeal their sentencing and ordered restitution following their guilty pleas to one count of conspiracy to commit mail fraud. Anthony Casias was sentenced to 30 months and Leo Casias was sentenced to 27 months. Both were sentenced under the Guidelines, though the judge departed upward from the Guidelines in both cases. The sentences were appealed under 18 U.S.C. section 3742. This court has jurisdiction over the timely appeals pursuant to 28 U.S.C. section 1291.
 
 I. Facts
 
 3
 The Casias brothers owned and operated East/West Travel and Tours, Inc. (East/West). Leo was president and Anthony, who had day-to-day control of operations, was vice-president.
 
 
 4
 Between October 1987 and May 1988, appellants fraudulently obtained money from students at high schools in the San Diego area through promises to plan and prepay travel tours to the East Coast. In fact, appellants diverted the monies intended for trip expenses to their own personal debts. In direct violation of their agreements with some of the schools, they also failed to segregate the travel monies.
 
 
 5
 Students from Wagenheim and Bell Junior High Schools paid appellants in advance for their May, 1988 trips. None of this money was used by appellants to pay any trip-related expenses. In fact, one particular check from the Wagenheim Junior High School student group to appellants for part of the trip expenses was immediately endorsed over by appellants to Walter Herbert, a preexisting business creditor of East/West.
 
 
 6
 Students from three other high schools, Mira Mesa, Lewis Jr., and O'Farrell School of Performing Arts paid appellants for group tours. Because appellants paid none of the trip-related expenses, the students, parents and community fund raisers had to come up with additional money or the trips would have been canceled. Several other schools' trips were canceled for lack of money after the groups realized East/West had defrauded them.
 
 
 7
 Appellants did actually pay part of the trip expenses for students from Emerald Junior High School. Even though the students gave appellants a check one week before the trip began, appellants did not have enough funds prior to the students' departure to pay for airfare. Appellants had agreed to keep the advanced trip funds in a trust account in the names of the school's parents group and East/West. Instead, appellants put the students' funds into the East/West general operating account, which was quickly depleted. Consequently appellants did not have sufficient funds to pay the trip expenses, and they had to arrange for American Airlines to keep $34,000 worth of prior accumulated commissions to apply toward the airfare for approximately 200 students and chaperones. American covered the remainder of the airfare.
 
 
 8
 The Emerald Jr. High School students began their trip on May 5, 1988. Appellants assured the students that all expenses were paid. Halfway through the tour, the group discovered that many of their fees had not been paid, including hotel, airfare, meals and ground transportation. East/West did not have the money to pay these expenses and so the students, the school district, and American Airlines came up with the necessary money or services. The school board was repaid by fund raisers and donations.
 
 
 9
 On May 18, 1988, appellants filed for bankruptcy, listing about $135,000 in assets and $1.4 million in debts.
 
 
 10
 After appellants pleaded guilty, the U.S. Probation Office prepared presentence reports on both appellants. Pursuant to the United States Sentencing Commission Guidelines Manual, the probation officer calculated the appellants' total offense level as thirteen. To arrive at this number, the officer added seven points (for the $207,433 calculated loss)[1] to the base offense level. He added two points because the offense level involved more than one victim[2] and subtracted two points for acceptance of responsibility.[3] Because Anthony had five criminal history points and Leo had six, the probation officer determined both criminal histories to be III. Based on their total offense levels and criminal history categories, the officer calculated appellants' sentencing range at between 18 and 24 months.
 
 
 11
 Appellants objected to the report, claiming that the loss calculation was improper[4] and that their criminal history category overrepresented their criminal history. They requested a downward departure from the sentencing guidelines. Because the government disagreed with the appellants' definition of loss, the judge held an evidentiary hearing on the issue of loss to the victims on May 30, 1990.
 
 
 12
 On May 30, the judge advised appellants that he might depart upwards from the sentencing guidelines and that he wanted them to be prepared for that possibility. His reasoning, he said, was that he believed their criminal history category was significantly underrepresented, and he believed that having done the same crime twice, they were likely to do it again.
 
 
 13
 At the hearing, both sides presented conflicting evidence as to the total amount of loss. Appellant's counsel stated that his client had recalculated the loss to the victims as $188,000 rather than the earlier $85,000 figure.[5] The government presented the testimony of a certified public accountant who had studied all the East/West books and had spoken with many of the victims personally. He testified that the total amount of loss for purposes of U.S.S.G. section 2F1.1 was $284,499.[6]
 
 
 14
 The judge determined that the government's calculations were more accurate because they were based on actual figures from the East/West books.[7]
 
 
 15
 The judge then made an upward departure for both appellants under U.S.S.G. section 4A1.3. The judge said that their criminal history category underrepresented their actual criminal history and thus their likelihood of repeating their crimes. He expressed certainty that had the judge who sentenced appellants in their prior East/West fraudulent scheme known about the new scam, he would have revoked their probation. Had their probation been revoked, appellants would have been in prison, adding points to their criminal history score.
 
 
 16
 By departing to the next criminal history category of IV, and by using the offense level calculated by the probation office, the judge determined that both appellants fell into the 24 to 30 month sentencing range. The court sentenced Anthony to 30 months and Leo to 27 months. He used the total loss figure calculated by the government witness and set restitution at $284,499. The appellants are jointly and severally liable to pay this amount over three years in $6,000 monthly installments.
 
 II. Sentencing Court's Findings
 
 17
 We review for clear error the district court's factual findings made in the course of applying the Sentencing Guidelines. United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990). The sentencing court's interpretation of the Guidelines, however, is reviewed de novo. United States v. Niven, 952 F.2d 289, 291 (9th Cir.1991).
 
 
 18
 Appellants allege error in the sentencing court's finding that part of the money diverted from the student travel tour funds was used to pay restitution for a 1983 larceny conviction. The court relied on uncontroverted testimony by a certified public accountant that $11,140 of money obtained from student groups had been used in this manner. We therefore see no error in its finding.
 
 
 19
 Appellants also object to the sentencing court's finding that the amount of loss inflicted by their fraud exceeded $200,000. The court arrived at its valuation of the loss by combining the amount paid to the appellants but not spent on the tours, with the additional expenses paid by third parties to allow the students to complete their trips. The district court incorrectly interpreted the Guidelines to include both these components in the calculation of loss. There can be no question that the amount paid to the appellants by the student groups should be considered in calculating the loss. See Application Note 2, Commentary to § 2B1.1 (" 'Loss' means the value of the property taken, damaged, or destroyed."). However, we find the district court erred in adding to the loss figure the amounts paid by third parties, who assisted the student groups in completing their travel. This could result in the Casias brothers paying twice--refunding money for a trip to students and then also reimbursing the third parties who actually funded the trip. We believe the proper measure of loss is the amount paid to appellants minus the amount appellants actually spent on student trips, plus any reasonably foreseeable consequential damages.[8] Thus, loss will include any amounts paid by third parties which exceed the amount the Casias brothers had charged and now return for trips.[9]
 
 
 20
 Under this method of calculation, it is unclear whether the loss still would exceed $200,000 for sentencing purposes.[10] We therefore remand so that the district court may determine the proper amount of loss.
 
 
 21
 III. Rejection of Leo Casias' Request for Minor Role Adjustment
 
 
 22
 Leo Casias requested an adjustment in his sentence because he claimed to have had a small role in the scheme. Under U.S.S.G. section 3B1.2, the offense level may be decreased if the defendant was a minimal or minor participant in the criminal activity. The commentary to this section states that a minimal participant applies to someone who is plainly among the least culpable of a group and that such an adjustment will be infrequent. A minor participant is someone who is "less culpable than most other participants." U.S.S.G. § 3B1.2, comment (n. 3).
 
 
 23
 Leo is not entitled to a minimal role adjustment, as this applies only when "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."[11] As discussed below, Leo had knowledge of what was occurring in the operation of the travel agency of which he was president.
 
 
 24
 Likewise, the judge properly denied a minor role reduction. "A district court's denial of minor participant status is a factually dependant determination which will be upheld unless clearly erroneous." United States v. Ocampo, 937 F.2d 485, 491 (9th Cir.1991) (citing United States v. Rexford, 903 F.2d 1280, 1282 (9th Cir.1990)). In fact, "[a] simple statement by the district court that the defendant was not a minor participant is typically sufficient to settle the question." Id.
 
 
 25
 Leo's statements to the probation officer provide sufficient basis for the judge to refuse the requested role reduction. Leo admitted that he knew that East/West was having severe financial difficulties by April 1988, that the money from the Emerald students was not segregated as promised, and that money paid to East/West for travel expenses was used for other East/West expenses and obligations.
 
 
 26
 IV. Propriety of District Court's Upward Departure
 
 
 27
 In reviewing upward departures from the recommended range under the Sentencing Guidelines, we must determine whether: (1) the district court had legal authority to depart; (2) factual findings support the reason for departure; and (3) the extent of the departure is unreasonable. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc).
 
 
 28
 The district court departed upward, reasoning that appellants' criminal history category failed to represent adequately the seriousness of their past conduct, or the likelihood that they would commit other crimes. There is no question that the district court had legal authority to depart on this basis. See U.S.S.G. § 4A1.3 (policy statement); United States v. Chavez-Botello, 905 F.2d 279, 281 (9th Cir.1990).
 
 
 29
 We do not believe the district court clearly erred in concluding that the facts of this case support a departure on this basis. The court reasonably inferred an increased likelihood of future fraudulent activity based on the pattern of misconduct evident in the similarity between appellants' prior crimes and the scheme to defraud the students in this case. Likewise, the district court did not err in concluding that the appellants' criminal history score failed adequately to represent their past conduct, since appellants had received lenient sentences for their prior convictions. See U.S.S.G. § 4A1.3 (criminal history may be inadequately represented where defendants "had previously received an extremely lenient sentence for a serious offense"). In this case, for example, had the appellants received a term of imprisonment for their prior conviction, rather than simply probation, two points would have been added to their total criminal history points under U.S.S.G. § 4A1.1(b), raising their criminal history category from a III to a IV.
 
 
 30
 In light of this, we believe the departure was adequately guided by the "structure, standards and policies" of the Guidelines. Lira-Barraza, 941 F.2d at 751. The district court, finding that a criminal history category of III failed adequately to reflect the seriousness of the appellants' past criminal conduct and the likelihood that the appellants would commit other crimes in the future, sentenced them within the Guidelines range they would have had with a criminal history category of IV. This choice of sentence was not unreasonable.
 
 V. Notice Requirement for Upward Departures
 
 31
 In their supplemental brief, appellants raise an additional issue, prompted by a recent Supreme Court case--the notice required before a judge may depart from the Guidelines.
 
 
 32
 In Burns v. United States, 501 U.S. -, 111 S.Ct. 2182 (1991), the Supreme Court held that:
 
 
 33
 [b]efore a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure.
 
 
 34
 Id. at 2187 (footnote omitted).
 
 
 35
 In the footnote to this passage, the Court said it was not addressing the issue of the proper timing of the notice. Instead, the Court said, it was leaving that up to the lower courts, which are "free to adopt appropriate procedures by local rule." Id. at 2187 n. 6.
 
 
 36
 The district court in this case did give notice that it might depart upward. On May 29, the judge stated that he was considering departing upwards on the grounds that the appellants' criminal history was underrepresented. He stated that he was concerned about the similarity between appellants' 1983 crime and the student trip scheme and the fact that they improperly used student funds to pay restitution in the 1983 case. He specifically warned appellants to be prepared to argue about a departure at sentencing the next day: "You can discuss that (the restitution payment in the 1983 case), because that concerns me, because I am, frankly, more likely to depart up than down. And I want to know whether there is a basis of departing on the basis of that.... I am just saying I want you to be facing that."
 
 
 37
 Appellants argue that one day notice was insufficient. They cite Local Rule 430, which requires the government to give five days advance notice if it intends to seek an upward departure. This rule does not prove error in this case. First, the rule applies to the government's request, not the court's sua sponte ruling. Second, the remedy in Rule 430 is to provide the defense with a continuance to permit preparation of any objection. In this case, the judge asked at sentencing on May 30 if appellants had any objections to his intent to depart upward. Counsel for appellants argued against the departure but never asked for or indicated he needed a continuance.
 
 
 38
 We find that the notice given by the judge on May 29 was sufficient in timing and content to satisfy the Burns notice requirement.
 
 VI. Propriety of Restitution Order
 
 39
 The amount of restitution to be paid and the identity of the persons to be paid are factual questions and therefore reviewed for clear error. It is provided for in 18 U.S.C. section 3663(b)(1). Under this section, the court may order the return of the property to the owner or if that is impossible, then the value of the property upon sentencing. In this case the property is the money the appellants took from the students and did not spend on the trips.
 
 
 40
 Appellants argued that the proper measure of loss or restitution to be paid is the value of providing the service involved--here the trips. We reject this contention and hold that the better measure is the actual loss to the victims--the amount paid to appellants not actually spent on trips, plus reasonably foreseeable consequential damages.[12] The Victim and Witness Protection Act, 18 U.S.C. § 3663 (1988), provides that the district court may order restitution in an amount tied to the actual losses the victims suffered. United States v. Barany, 884 F.2d 1255, 1260 (9th Cir.1989), cert. denied, 493 U.S. 1034 (1990). The amount actually lost by the victims is the amount they paid appellants which was not used for trips, plus any additional amounts paid by third parties to cover expenses beyond the amount charged by the Casias brothers.[13]
 
 
 41
 In ordering restitution, the court must be able to identify positively each victim and the defendant must have an opportunity to refute the amounts. And the amount of restitution must be definite. United States v. Pomazi, 851 F.2d 244, 249 (9th Cir.1988).
 
 
 42
 The district judge determined the loss to be $284,499. This figure reflects the amount paid by all the student groups and third parties for services which the victims never received. To his order of restitution, the judge attached the list of victims from each school that was prepared by the probation officer as part of the presentence report.
 
 
 43
 There is a discrepancy of $77,066 between the amount the judge ordered and the amount actually identified as owed to each victim in the probation officer's report which was attached to the restitution order. While the government now claims it can explain the discrepancy, the fact is that the total amount of restitution is not clearly identified, nor are all the victims clearly identified, as is required by law. We therefore vacate and remand on this point so that the district court may properly determine the identity of each person to receive restitution and the amounts to be paid to each.[14]
 
 
 44
 AFFIRMED in part, VACATED in part and REMANDED for further proceedings consistent with the above.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This amount is less than the $284,433 offered by the government's witness, FBI Agent Culp, because the probation officer could not obtain loss figures from American Airlines, he only included victims he could identify and losses that were exact, and he could not determine the amount of the loss to other travel agents and vendors
 
 
 [2]
 Pursuant to U.S.S.G. § 2F1.1(b)(2)
 
 
 [3]
 Pursuant to U.S.S.G. § 3E1.1
 
 
 [4]
 Appellants maintain that the loss should be calculated at $85,000 because some of the students received trips--albeit financed by third parties. Appellants argue that they only have to reimburse these students the additional funds that actually came directly from the students
 
 
 [5]
 This lower figure, appellants' counsel stated, reflected appellants new agreement that they should not be given credit for the money raised by third parties to replace the money the appellants misspent. Appellants based the new figure on the cost of actually providing the services promised to the students. In effect, this would give appellants a profit for trips they never actually effectuated because the actual cost of airfare, meals, hotels, etc. is less than the sum the students paid to appellants to organize and plan the trips
 
 
 [6]
 This amount would put the loss in the $200,000 to $500,000 range, adding seven points to the base offense level to account for the loss. The result is therefore the same as the conclusion reached by the probation officer
 
 
 [7]
 Appellants' witness had no qualifications as a financial analyst. Appellants said the witness could testify because he could state his assumptions and the court could judge whether such assumptions were fair or not
 
 
 [8]
 We believe this case to be analogous to a product substitution case. The students believed they were purchasing complete trip packages and in fact most only received part of a trip, i.e. a one-way plane ticket. Consequential damages are therefore appropriate
 
 
 [9]
 For example, if the Casias brothers charged a particular student group $2,000 for a trip and then did not provide it, and it cost third parties $3,000 to fund the same trip, the loss equals $3,000. The brothers would be responsible for the $2,000 the students paid as well as for $1,000 paid by the third-party provider because such an expense is foreseeable consequential damage. See Application Note 7(c), Commentary to U.S.S.G. § 2F1.1 (loss may include all "reasonably foreseeable consequential damages")
 
 
 [10]
 Appellants should receive full credit for money they expended on behalf of student travel. Thus, the amount of loss should be offset by the $34,000 in commissions appellants gave up to American Airlines to cover student travel
 
 
 [11]
 See Application Notes to § 3B1.2(a)
 
 
 [12]
 See footnotes 9 and 10 above for a further discussion
 
 
 [13]
 Again we note that appellants should not be double-charged for any trips or portions thereof. When they refund money to the students, the Casias brothers should only owe third parties that sum beyond the amount refunded which was spent to provide the trips
 
 
 [14]
 Again, we note that the district court should be careful to give appellants full credit for moneys they actually did spend on student travel--i.e. the $34,000 in commissions spent on student airfare