993 F.2d 886
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bardo THING, Defendant-Appellant.
 No. 92-50582.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 27, 1993.*
Decided May 13, 1993.
 
 Before: BROWNING, KOZINSKI, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bardo Thing appeals from his 70-month sentence, imposed following a guilty plea, for distribution of phencyclidine (PCP) in violation of 21 U.S.C. § 841(a). Thing contends that the district court erred by (1) calculating his base offense level by considering evidence of the amount of liquid PCP he actually negotiated and distributed rather than the amount later measured by the police chemist; (2) admitting unreliable evidence; and (3) failing to give notice of its intent to depart from the Sentencing Guidelines range recommended in the presentence report (PSR). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 
 3
 We review de novo the legality of a sentence, United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992), while reviewing for clear error the district court's factual findings underlying its determination of the appropriate Guideline range, United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990).
 
 A. Drug Quantity
 
 4
 When a drug possession offense also involves negotiation to traffic in the controlled substance, the district court should use the amount under negotiation to calculate the base offense level even if it exceeds the amount actually seized. United States v. Molina, 934 F.2d 1440, 1451 (9th Cir.1991) (citing U.S.S.G. §§ 2D1.1, comment. (n. 12), 2D1.4, comment. (n. 1)).
 
 
 5
 Here, Thing was arrested after he was videotaped during two sales of PCP crystals dissolved in either ("liquid PCP") to two government informants. The informants purchased a total of 2.25 "pours" of liquid PCP for a total of $225, and turned the containers containing the pours over to the police. Several days after the sales were completed, San Diego Police Department chemist Stephen Guroff tested the mixtures in the containers and determined that 18.5 grams of PCP mixture remained after evaporation of the ether. The presentence report calculated Thing's offense level based on the 18.5 grams of PCP measured by the chemist.
 
 
 6
 The government filed a sentencing memorandum objecting to the PSR's calculation of the applicable range. The government argued that Thing had negotiated with the informants to sell a total of 2.25 ounces (63 grams) of liquid PCP, but that most of the ether diluting agent had evaporated by the time the samples were tested. The government offered affidavits from the informants in which they attested that they understood the term "pour" to refer to an ounce (28 grams) of liquid PCP dissolved in ether, for which the street price was $100. The government also offered affidavits from FBI Special Agent Elizabeth Brown, who attested that she had supervised the controlled buys and reviewed the videotapes in which the informants negotiated for PCP at a rate of $100 per ounce, and from chemist Guroff, who attested that PCP is sold on the street dissolved in ether and that ether will evaporate very rapidly even from sealed containers.
 
 
 7
 At sentencing, Thing disputed the government's interpretation of the street term "pour" but offered no evidence to contradict the testimony of the informants that they had negotiated and bought 63 grams of PCP mixture. The district court agreed with the government's contention that Thing should not receive a reduced offense level due to the evaporation of ether from the mixture. Based on the affidavits submitted by the government, the district court found that the adjusted offense level was 20, resulting in an applicable Guideline range of 70-87 months. As the only evidence offered tended to show that the buyers negotiated for 63 grams of PCP mixture, the district court's fact finding was not clearly erroneous and it did not err in its calculation of the offense level.[1] See Molina, 934 F.2d at 1451; Burns, 894 F.2d at 336-37.
 
 B. Accuracy of Evidence
 
 8
 Thing also contends that the district court considered unreliable evidence when determining that he was responsible for 63 grams of PCP rather than the 18.5 grams which were present when the DEA chemist analyzed it. As he failed to object to the admission of this evidence before the district court, we will review his claim only for plain error. See United States v. Hernandez-Rodriguez, 975 F.2d 622, 628 (9th Cir.1992). We review for abuse of discretion the district court's determination that evidence is sufficiently reliable. United States v. Petty, 982 F.2d 1365, 1369 (9th Cir.1993).
 
 
 9
 In sentencing a defendant, the district court may consider any information that has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6A1.3(a). Sentencing judges are not restricted to evidence that would be admissible at trial. Id.; Petty, 982 F.2d at 1367-68 (hearsay statements admissible when corroborated by independent evidence); Burns, 894 F.2d at 336-37 (district court may rely on investigative reports containing hearsay evidence).
 
 
 10
 Here, the district court considered affidavits from the buyers in Thing's drug negotiations, an FBI agent, and a police chemist before finding that Thing had negotiated to sell 63 grams of PCP mixed with ether. Thing argues, first, that the district court should not have considered the test results applied to the vials of PCP mix he sold to the informants, because the government had not proven an unbroken chain of custody or established that no one had tampered with the sample. As the district court did not rely on the test results when determining the amount distributed, the chain of custody of the drug mixture was not relevant to the sentencing decision.
 
 
 11
 Second, Thing argues that the affidavits offered by the government were unreliable and inaccurate. At sentencing, Thing argued that the government witnesses' assertion that a "pour" was equal to an ounce of PCP was unreliable because they were not experts and were motivated to cooperate with the government. Nevertheless, he offered the district court no evidence to dispute the factual accuracy of the affidavits.[2] Uncontroverted evidence showed that the other parties to the negotiation used the term "pour" to mean an ounce.[3] This evidence was corroborated by the chemist's statement that ether will tend to evaporate rapidly from a mixture of PCP and ether, which explains why less than 63 grams of mixture remained by the time the sample was tested. Accordingly, we see no plain error in the district court's consideration of the informants' evidence.[4] See Petty, 982 F.2d at 1369.
 
 C. Lack of Notice
 
 12
 Finally, Thing contends that the district court erred by departing from the applicable Guidelines range without giving prior notice of its intent to do so.
 
 
 13
 Although the district court must give notice when any sentencing factor is reasonably in dispute, United States v. Brady, 928 F.2d 844, 846-47, the defendant receives adequate notice of disputes when the government files objections to the presentence report, cf. Burns v. United States, 111 S.Ct. 2182, 2185-86 (1991) (discussing departures from the Guidelines and noting that "[i]n the ordinary case, the presentence report or the Government's own recommendation will notify the defendant" of disputes and the facts allegedly supporting the prosecution's position).
 
 
 14
 Here, the district court did not depart from the Guidelines range, but rather, rejected the PSR's calculation of the range and determined that a higher range was applicable. Thing was on notice that the applicable range was in dispute because the government had filed a detailed sentencing memorandum setting forth its objections to the PSR and the factual basis for its position. The district court afforded Thing an opportunity to respond to the government's argument before ruling on the disputed sentencing range, and did not depart from the resulting range of 70-87 months. Accordingly, there was no procedural error. Cf. Burns, 111 S.Ct. at 2185-86; Brady, 928 F.2d at 847-88.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Thing refers in his brief to controverting evidence, this evidence was never introduced before the district court and is not part of the record on appeal. See Fed.R.App.P. 10; United States v. Sanga, 967 F.2d 1332, 1335 n. 2 (9th Cir.1992)
 
 
 [2]
 In his brief, Thing makes various factual allegations attacking the veracity of the informants. He also refers to an alleged conversation between defense counsel and a "gang expert" purporting to establish that a "pour" does not equal an ounce of PCP, and to another alleged conversation between defense counsel and a chemist purporting to establish that ether will not evaporate from a closed container. We will not consider factual allegations in the brief that are unsupported by evidence in the record. See Sanga, 967 F.2d at 1335 n. 2
 
 
 [3]
 Thing also contends that the informants were unqualified to offer an opinion as to the street meaning of the word "pour." He offers no authority, and we know of none, for the proposition that a witness cannot testify as to what she meant when using a particular word without first establishing expert credentials
 
 
 [4]
 Thing's motion to lodge audio and video tapes for this court's consideration is denied. Thing apparently seeks to have this court review the audio and video tapes in lieu of written transcriptions due to alleged inconsistencies between the tapes and the transcripts. Nevertheless, Thing has identified no actual discrepancies; rather, he appears to dispute the government's and the district court's interpretation of the terms used during the negotiations. Accordingly, it is unnecessary for this court to review the actual tapes